MRS. MARY CREWS POINDEXTER AND MARY ELIZABETH POIN-
DEXTER v. THE FIRST NATIONAL BANK OF WINSTON-
SALEM.

(Filed 31 January, 1958.)

1. **Executors and Administrators § 30: Trial § 36—Where necessary for clarity, each element of damages should be separately submitted.**

   In an action against the administrator for wrongfully or negligently administering the estate, based upon allegations of numerous separate acts of malfeasance or nonfeasance, including failure to collect from the principal a note upon which the deceased was endorser, failure to collect the salary due decedent at his death, and unauthorized and negligent acts in carrying on the business of decedent, *held,* exception to the charge in submitting the questions under the single issue whether defendant wrongfully or negligently administered the estate, without differentiating between the numerous items of damage and instructing the jury as to each of them so that the jury could clearly apply the law to the facts and contentions of the parties, is sustained.

2. **Executors and Administrators § 30—**

   Where, in a special proceeding by an administrator to sell lands to make assets to pay debts, respondents, heirs and distributees, by verified answer admit the allegations of the verified petition that a par-

ticular note constituted a liability of the estate, and judgment is rendered therein directing the sale of the lands, *held*, the heirs and distributees, in their later action against the administrator for wrongful or negligent administration of the estate, are estopped to allege any negligent or wrongful conduct of the administrator in connection with the note.

3. **Judgments § 32—**

Where a material fact is in issue and decision of such matter is necessary to the rendition of the judgment, such matter becomes *res judicata* and may not be again litigated in a subsequent action between the same parties, regardless of the form the issue may take in the subsequent action.

4. **Damages § 13a: Trial § 31b—**

Where there are numerous elements of damages based upon separate acts of nonfeasance or malfeasance, it is error for the court to fail to state the measure of damages or state the evidence as to each element of damage and apply the law to the evidence in regard to each.

APPEAL by defendant from *Armstrong, J.*, at October 22, 1956, Term of FORSYTH as No. 380 at Spring Term 1957, carried over to Fall Term 1957 of Supreme Court.

Civil action to recover of defendant, in accordance with allegations of complaint, as finally amended, these items: (1) Loss by reason of failure of defendant to collect the note of $13,750.00, dated 8 July, 1951, executed by Winston Manufacturing Company, Inc., to defendant, for money borrowed by said company, with certificate for 983 shares of capital stock of Winston Manufacturing Company of Hickory, formerly Terry Crouch Furniture Company, a North Carolina corporation, as collateral security, and with N. S. Poindexter, the decedent, and Mary Crews Poindexter, plaintiff here, as accommodation endorsers and sureties. (2) Net loss on claim for salary due by Winston Manufacturing Company, Inc., to N. S. Poindexter, the decedent, $7,415.01 by reason of failure of defendant to collect same. And (3) Loss of $65,000.00 sustained by the estate of N. S. Poindexter by reason of wrongful and negligent operation of the Winston Furniture Company, and allied industries in the manufacture of furniture.

The plaintiffs are the widow and daughter of N. S. Poindexter, deceased, and as such are his only distributees and heirs at law.

This case was in Supreme Court on former appeal, opinion being reported in 244 N.C. 191, 92 S.E. 2d 773.

The facts there stated will not be repeated here,—except to say that the record shows that Mr. Clock was elected president of Winston Manufacturing Company, rather than that the trust officer of the Bank was so elected.

It appears uncontroverted from the pleadings that on 8 July, 1951, plaintiff Mary Crews Poindexter and her husband, the

late N. S. Poindexter, became accommodation endorsers and sureties on a note in the amount of $13,750.00 executed by Winston Manufacturing Company, Inc., to defendant bank for money borrowed by said company, with interest at rate of 6%, due thirty days after date; that as shown on the face of the note the Winston Manufacturing Company pledged as collateral security for the payment of this note certificate for 983 shares of capital stock of Winston Manufacturing Company of Hickory, formerly known as Terry Crouch Furniture Company, a North Carolina corporation, 99 per cent of whose capital stock was owned by Winston Manufacturing Company. This note was not paid when it became due on or about the 7th day of August, 1951.

Plaintiffs allege in their complaint, summarily stated: That defendant in accepting the duties of administrator of the estate of N. S. Poindexter took control and possession of various assets of decedent, among which were: (1) One-half of the outstanding capital stock of said Winston Manufacturing Company, Inc., a furniture manufacturing concern, operating its main plant at Winston-Salem, and certain subordinate furniture manufacturing facilities at Hickory, Thomasville, and Troy, North Carolina, of the fair and reasonable net worth of $65,000.00, and "could have been sold for that amount"; and

(2) Claim for back salary of $7,740.01 (the exact amount is variously stated approximately at this figure), due from said Winston Manufacturing Company, all of which had fair market value of $72,000.00, as against liabilities of only $6,000.00 exclusive of contingent liability as endorser for Winston Manufacturing Company as above set forth. And, in addition thereto, decedent owned real estate worth approximately $20,000.00, subject, however, to being sold by the defendant administrator should the personal property be insufficient to pay decedent's debts.

And in the complaint, as finally amended, plaintiffs further allege that all the real property of decedent was sold by order of court at defendant's instance, and from the proceeds received defendant administrator immediately paid itself as a creditor $14,029.60, because of decedent's endorsement as aforesaid— even though defendant's own neglect, delay and bad faith had rendered the security worthless.

Plaintiffs also allege (paragraph XXII) that "By paying itself the said $14,029.60 from funds of the decedent's estate it was holding as fiduciary, as aforesaid, the defendant wrongfully and unlawfully converted assets of said estate to its own use and benefit, the decedent and plaintiff endorser having been previously relieved of all liability in connection with said note and endorsement in that:

"(a) defendant had neglected and failed to collect said note from the principal debtor during the long period of time it could have done so;

"(b) it had neglected and failed to sell said security in satisfaction during the long period it could have done so;

"(c) by defendant's own affirmative act said secured stock was involved in the contract for Clock's benefit and was wrongfully and negligently withheld from sale until said company's affairs deteriorated and said stock became worthless or of little value;

"(d) defendant, by its own affirmative act, disposed of the plant, equipment, inventory and all the physical assets of said Winston Manufacturing Company, Inc., of Hickory, the company the secured stock was in, thereby substantially diminishing the value of said stock and rendering it of little or no value, no assets of any kind thereafter remaining but a few disputed accounts receivable.

"(e) the said principal debtor was rendered insolvent and said note uncollectible from it by the defendant's own neglect and mismanagement as more particularly appears elsewhere, all of which acts and omissions were in violation of the duties owed plaintiff endorser and decedent's estate by the defendant creditor administrator and all said wrongful acts and omissions proximately caused the plaintiffs to be damaged in the amount of $12,787.81 when the decedent's estate was unlawfully diminished by this unjust payment of the defendant to itself."

And plaintiff also alleged (paragraph XXIII) that

"Defendant did not faithfully execute the duties of trust imposed by law upon it as administrator, and was negligent in wasting and dissipating the assets and property of said estate and acted wrongfully and unlawfully and in bad faith in so doing in that

"(a) it undertook to administer said estate and operate said furniture manufacturing business when it had a material conflict of interest, the defendant being the largest creditor of both decedent and said parent company, because of which plaintiffs and said estate did not receive the faithful, impartial services. they were entitled to receive from the administrator;

"(b) it undertook, without legal authority, to operate a furniture manufacturing business of the type and scope here involved when it was unqualified to do so and also in that defendant falsely represented to plaintiffs that it was qualified and experienced to undertake said matter;

"(c) it failed, neglected and refused to liquidate decedent's interests for many months while the same were of value, know-

20—247

ing it was incompetent to preserve and safeguard the same during the continued operation thereof,

"(d) in operating said furniture manufacturing business it

"(1) employed and retained a manager, foreman and other employees that were not qualified to operate said business satisfactorily, which incapacity was known to defendant or could have been known through the exercise of due care;

"(2) it permitted expensive lumber and other materials to be wasted, and not properly utilized;

"(3) it allowed valuable machinery to rust and deteriorate, thereby diminishing in value because of lack of proper care;

"(4) it permitted high-salaried, skilled laborers to remain idle while drawing wages and also on occasions used them on low-salaried, common labor jobs and generally did not properly utilize the services of the employees;

"(5) it failed to see that orders received by said furniture company and subsidiaries were properly filled and completed in accordance with contract and purchase order specifications, thereby causing said companies to lose valuable patrons and resulting in shipments being rejected and returned after much expensive labor and material had been invested therein;

"(6) purchased new, expensive machinery and equipment that was unnecessary under the circumstances;

"(7) allowed some employees of said company exorbitant and unnecessary allowances for expense and travel and in numerous other ways handled said business interests in a wasteful, incompetent and inefficient way,

"all of which wrongful and negligent acts and omissions proximately and directly caused said business interest belonging to said estate, having a fair market value of $65,000 to be wasted and rendered worthless, thereby damaging plaintiffs in said amount."

Plaintiff further alleged (paragraph XXIV) that "Defendant also wasted the property and assets of said estate and acted wrongfully, unlawfully and without due care in permitting the decedent's claim for back salary in the amount of $7,415.01 to become worthless, in that defendant during the long period when said claim could have been collected by the exercise of due diligence, did nothing to accomplish collection and also committed the other wrongful acts heretofore set forth which caused said principal debtor to become bankrupt, as a consequence of which plaintiffs were also damaged in said amount of $7,415.01."

Furthermore, plaintiff alleged (paragraph XXV) : "Because of all the matters and things herein set forth plaintiffs' lawful distributable share of said estate was wrongfully reduced in the amounts set forth as aforesaid, all directly and proximately because of the various wrongs of defendant, because of which plaintiffs are entitled to recover of the defendant for the wrongful conversion of estate assets as aforesaid and for the wasting and dissipation thereof the total sum of $85,202.82," for which judgment is prayed.

Defendant, as stated on former appeal, by answer denied the Winston Manufacturing Company was solvent at the time it qualified as administrator. It averred that it attempted to straighten out the business but that conditions of the plants, its accounts, books and records were such that the company failed, notwithstanding the good business management provided by defendant; that the defendant at all times and in all things acted in good faith and in the best interests of the estate and that it was not guilty of mismanagement in any particular.

And defendant, after having first obtained leave of court, for estoppel by judgment and *in pais*, on 23 January, 1956, filed amendment to its answer by averring the following:

"1. On the 8th day of July,1953, there was instituted in the Superior Court of Forsyth County, North Carolina, a special proceeding entitled: THE FIRST NATIONAL BANK OF WINSTON-SALEM, Administrator of the Estate of N. S. POINDEXTER, Deceased, PETITIONER, VS. MRS. MARY PASCHALL CREWS POINDEXTER and MARY ELIZABETH POINDEXTER, RESPONDENTS," for the purpose of obtaining authority to sell real estate belonging to the estate of N. S. Poindexter, the deceased husband of Mary Paschall Crews Poindexter, and father of Mary Elizabeth Poindexter, to make assets to pay debts of said N. S. Poindexter, deceased.

"2. In that proceeding Mrs. Mary Paschall Crews Poindexter and Mary Elizabeth Poindexter, who was the daughter of Mrs. Mary Paschall Crews Poindexter and N. S. Poindexter, deceased, were duly served with summons and thereby brought into said cause as respondents.

"3. In the petition filed in that cause the petitioner alleged that the personal property belonging to the estate of N. S. Poindexter, deceased, was insufficient to pay the debts of said estate and in listing the known debts then outstanding against the said estate there was included an item of indebtedness as follows: Note of Winston Manufacturing Company dated 7-8-51 in the amount of $13,750.00. Interest to 5-1-53 in the amount of $139.80. Endorsed by N. S. Poindexter and Mary Crews Poindexter—$13,889.80, and said petition is asked to be taken as a

part of this paragraph of this amendment to the answer of the defendant heretofore filed in this cause as though copied verbatim herein.

"4. On the 13th day of August, 1953, the respondents in that proceeding, Mrs. Mary Paschall Crews Poindexter and Mary Elizabeth Poindexter, filed a verified response to the petition previously filed in said proceeding by the petitioner, in which response it was admitted that the item of indebtedness above referred to in the total sum of $13,889.80 as evidenced by promissory note dated 7-8-51 was an outstanding item of indebtedness against the estate of N. S. Poindexter, deceased, and likewise admitted that the indebtedness outstanding against the estate of N. S. Poindexter, deceased, amounted to more than the value of the personal property belonging to said estate, that it was necessary that the real estate belonging to said estate be sold to pay debts of said estate and the respondents joined in the petition of the petitioner and requested that the land described in said petition be sold at private sale subject to confirmation of court. The response of Mrs. Mary Paschall Crews Poindexter and Mary Elizabeth Poindexter herein referred to is asked to be taken as a part of this paragraph of the amendment to the answer of the defendant as though fully written herein.

"5. On the 13th day of August, 1953, the court, based upon the petition and the response herein referred to, entered an order in which the court found the following facts: (A) That at that time the known debts of the estate of N. S. Poindexter, deceased, amounted to $20,344.67. (B) That the personal property belonging to said estate amounted to $436.98. (C) That the personal property belonging to said estate was insufficient to satisfy the debts against said estate and cost of the administration. (D) That it was necessary that the real estate belonging to the estate of N. S. Poindexter and described in said order be sold to pay debts against said estate. (E) That it was for the best interests of the estate of N. S. Poindexter, deceased, and the heirs of said estate to sell at private sale the real estate above referred to and described in said order. (F) That the widow of N. S. Poindexter, deceased, Mary Paschall Crews Poindexter, had waived or released her dower right in said real estate. (G) That the heirs designated in said orders were over the age of twenty-one (21) years and *sui juris.* (H) That all of said heirs had been properly served with summons in that special proceeding and that they had filed an answer in said proceeding in which they admitted the facts set forth in the petition, joined the petitioner in seeking an order of court to sell said real estate at private sale and affirmatively alleged that the petitioner was entitled to the relief prayed for in the petition.

"6. Based upon the findings of fact by the court in said order, the court proceeded to make the following adjudication: (a) That a sale of the real estate described in said order was necessary for the payment of the debts of the estate of N. S. Poindexter and cost of the administration. (b) That the First National Bank of Winston-Salem, Administrator of the Estate of N. S. Poindexter, deceased, be, and it is hereby authorized, empowered and directed to sell said real estate at private sale free of the dower rights of Mrs. Mary Paschall Crews Poindexter but subject to the approval of the court and subject to the 1953 taxes.

"The defendant in this cause asks that the order above referred to be taken as a part of this amendment to its answer as though fully written herein.

"7. On the 27th day of August, 1953, the petitioner in the special proceeding herein referred to filed in said proceeding a petition for confirmation of the private sale in which, among other things, it was reported to the court that Mary Elizabeth Poindexter had offered the petitioner the sum of $24,000.00 for the real estate described in said petition and recommended to the court that said offer be accepted and that it be authorized to sell said real estate to Mary Elizabeth Poindexter for the sum of $24,000.00.

"8. On the 27th day of August, 1953, and based upon the petition referred to in the preceding paragraph an order was entered by the court in which the petitioner in said proceeding was authorized and directed to sell to Mary Elizabeth Poindexter the real estate described in said order and hereinbefore referred to at the price of $24,000.00 and said order is asked to be taken as a part of this paragraph of this amendment as though fully written herein.

"9. Pursuant to the authority of court had and obtained in the special proceeding herein referred to and upon receipt of the purchase price of $24,000.00, the defendant in this cause proceeded to convey said real estate to Mary Elizabeth Poindexter by deed duly recorded in Deed Book 675, page 10, in the office of the the Register of Deeds of Forsyth County, North Carolina, and the conveyance to Mary Elizabeth Poindexter was made with the full knowledge, consent and approval of Mary Crews Poindexter.

"10. On the 28th day of September, 1953, the defendant in this cause filed its final account with the Clerk of the Superior Court of Forsyth County, North Carolina, showing the receipts had and disbursements made in connection with the administration of the estate of N. S. Poindexter, deceased, and one of the items listed in the list of disbursements made by it was the

payment of $14,029.60 in payment of the indebtedness and accrued interest on the note for $13,750.00 dated 7-8-51 hereinbefore referred to and after the filing and auditing of said final report the Clerk of the Superior Court of Forsyth County, North Carolina, entered on the 29th day of September, 1953, the following order of judgment: 'The foregoing and attached final report has been carefully examined and audited. From the report and evidence presented therewith, it is my opinion that, excepting disbursements for the purchase of investments, all disbursements shown therein are proper, that the report should be approved, and that the said representative should be discharged. I, therefore, hereby approve all disbursements shown in the said report, except disbursements for the purchase of investments, approve the settlement of all matters as shown in said report, and discharge the said representative from further duties or liabilities. Therefore, let the report with this certificate be recorded.'

"11. The plaintiffs in this cause had full opportunity in the special proceeding herein referred to to plead all of the matters and things now involved in this cause and to have adjudicated in that proceeding all the rights between the plaintiffs and the defendant in this cause, but the plaintiffs in this cause, who were the respondents in the special proceeding herein referred to, neglected to raise the questions of which they now complain in this cause and on the other hand admitted the material allegations of the petition filed in said special proceeding and joined with the petitioner in asking the court to grant to the petitioner the authority prayed for in the petition.

"12. The said special proceeding and the order and confirmation of sale as well as the conduct of the defendant therein constitute an estoppel both *in pais* and by judgment, and such estoppel is hereby pleaded in bar of this action."

On 22 October, 1953, the defendant by way of estoppel, after having first obtained leave of court, filed further amendment to its answer by alleging the following:

"1. That, if the defendant did not have authority to continue to hold the stocks of Winston Manufacturing Company and Winston Manufacturing Company of Hickory, Inc., the plaintiffs and each of them had full knowledge of the fact that the said stocks were held and that the said businesses were continued, and acquiesced and consented to the holding of said stock and such operation, and they are estopped by reason of the said knowledge, consent, and acquiescence to assert any alleged lack of authority and any alleged misconduct of the defendant in permitting the said businesses to be continued."

The case was submitted to the jury upon these issues, which the jury answered as indicated:

"1. Did the defendant, The First National Bank of Winston-Salem, wrongfully or negligently administer the Estate of N. S. Poindexter, deceased, as alleged in the complaint? Answer: 'Yes.'

"2. If so, are the plaintiffs, or either of them, estopped to claim damages by reason of the wrongful or negligent conduct of the defendant, the First National Bank of Winston-Salem? Answer: 'No.'

"3. What amount of damages, if any, are the plaintiffs entitled to recover of the defendant? Answer: '$40,000.00.' "

To judgment in accordance therewith defendant excepts, and appeals to Supreme Court and assigns error.

*Eugene H. Phillips* for plaintiffs appellees.

*McLennan & Surratt, Ratcliff, Vaughn, Hudson, Ferrell & Carter* for defendant appellant.

WINBORNE, C. J.: The record and case on appeal here presented contains five hundred fourteen printed pages, in which there are seventy-nine assignments of error predicated upon one hundred twelve exceptions. And in brief filed in this Court defendant appellant states nine questions as involved on this appeal. However it appearing, upon consideration of the exceptions taken, assigned as error, that in the trial below there is prejudicial error for which a new trial must be granted, it is deemed expedient to advert only to some of them.

I. Assignment of error No. 71, based upon exception No. 104, is well taken. It is that the court erred in its charge on the first issue to differentiate between the numerous causes of action alleged by the plaintiffs, to state clearly the causes of action and the damages flowing therefrom, and to apply the law in each case to the evidence and other contentions of the parties in relation thereto as follows:

"The defendant excepts to the failure of the court in its charge on the first issue to differentiate between and to state clearly the various causes of action of the plaintiffs and the alleged damages flowing therefrom. The complaint alleges primarily three elements of damage: (a) the loss of the value of 451 shares of the stock of Winston Manufacturing Company, (b) the failure to collect the note of Winston Manufacturing Company in the original principal amount of $13,750.00 secured by 983 shares of the capital stock of Winston Manufacturing Company of Hickory (Terry Crouch Furniture Shops), and (c) failure to collect the

alleged item of salary for the services of Nat S. Poindexter rendered prior to his death to Winston Manufacturing Company. The complaint further alleges that these losses arose from a variety of causes: (i) the lack of authority of the defendant to operate a business or businesses, (ii) the negligent operation of a business or businesses, (iii) the failure of the defendant to sell the stock of Winston Manufacturing Company or to attempt to sell it, (iv) the failure of the defendant in its banking department to offset the note for $13,750 against deposits of Winston Manufacturing Company, (v) the failure of the defendant to apply monies received by Winston Manufacturing Company from the sale of the assets of Winston Manufacturing Company of Hickory to the discharge of the note for $13,750, (vi) the negligent failure of the defendant to collect the salary item, (vii) the failure of the defendant to close and liquidate the businesses. Thus, six or more separate causes of action were submitted by the court to the jury under the first issue. It was the duty of the court to differentiate between the separate causes of action and items of damages clearly, and to charge the jury as to each of them so that it could clearly apply the law to the facts and the contentions of the parties, which the court failed to do. The defendant therefore excepts to the failure of the court to submit the issues clearly to the jury, to charge the jury upon the law relating thereto, and to apply the law to the facts as required by law."

II. Defendant appellant excepts to that portion of the charge to the jury in which the court instructed "that if the jury find from the evidence the facts to be as all the evidence tends to show, that you will answer the second issue submitted to you in this case 'No'." Exception No. 100, assignment of error No. 68. In the light of the amendments to answer of defendant, and evidence in relation thereto, the exception is well taken.

Furthermore, defendant, in apt time, requested the court to instruct the jury on the second issue as follows:

"The defendant contends and has offered evidence tending to show that it commenced, on July 8, 1953, a special proceeding to sell lands owned by Poindexter at the date of his death to make assets to pay debts, that the petition prayed for a public sale, that the petition set forth the debts remaining unpaid, including the note of Winston Manufacturing Company for $13,750.00; that the plaintiffs employed an attorney who represented them in the proceedings; that the plaintiffs, through their attorney, re-

quested the defendant to amend its petition to pray for a sale at private sale; that an arrangement was worked out to get the bank to lend to the plaintiffs about $25,000.00 which was enough to pay all the debts of the estate including the $13,750.00 note, the costs of administration, and other items, and that the defendant then amended its petition to pray for a private sale to the plaintiff Mary Elizabeth Poindexter, the plaintiffs filed an answer admitting the allegations of the petition as amended, and joined in the prayer of the petition for the sale of the land; that an order of sale was entered finding the facts alleged in the petition and admitted in the answer; that sale was ordered, and, after the offer remained open for ten days, the sale to the plaintiff Mary Elizabeth Poindexter was confirmed; that the plaintiffs then knew the terms of the $13,750.00 note, the collateral security deposited with it, and the endorsements on it; that the sale was closed, a deed delivered to Mary Elizabeth Poindexter, and the purchase price was paid from the proceeds of the loan made by the defendant to her; that the note given for the loan had a maturity of one year which had been allowed to enable the plaintiffs to dispose of enough of the land to pay the debt; that it was agreed that a quitclaim deed or deeds would be given for lands sold within the one-year period if the proceeds were paid on the note, and that some of the land was sold, and quitclaimed, and the proceeds of sale were credited on the note within the one-year period."

Also "You may consider the contentions of the defendant and the evidence offered in support thereof relating to the special proceedings to sell land to make assets to pay debts in connection with the note of $13,750.00. If you find from the evidence and by its greater weight that the contentions of the defendant, which I have stated (paragraph 1) are true, the court charges you that the plaintiffs are estopped to allege any negligence or wrongful conduct of the defendant in connection with the $13,750.00 note, and you will answer that issue YES as to the note for $13,750.00."

These requests were refused, and defendant excepts, exceptions numbers 73 and 75, assignments of error numbers 41 and 43.

Considering the evidence in respect to the proceeding to sell land to make assets as described in defendant's plea of estoppel, the Court is of opinion and holds that defendant is entitled to the requested instruction, and the exceptions to the refusal thereof are well taken and valid.

In this connection the evidence offered, as shown in the record, appears to support the statement of contention, on which the request is based. It is clear that in the verified petition to sell lands to make assets it is alleged by the petitioner as a fact that the $13,750.00 note is a debt of the estate of N. S. Poindexter, and the respondents, his widow and daughter, in their answer, verified by both of them, admit that the note is such a debt.

Having made such solemn admission they are estopped in the present action to contend otherwise. *Armfield v. Moore*, 44 N.C. 157; *Crawford v. Crawford*, 214 N.C. 614, 200 S.E. 421; *Craver v. Spaugh*, 227 N.C. 129, 41 S.E. 2d 82; *Smith v. Furniture Co.*, 232 N.C. 412, 61 S.E. 2d, 96; *Stansel v. McIntyre*, 237 N.C. 148, 74 S.E. 2d, 345; *Bowen v. Darden*, 241 N.C. 11, 84 S.E. 2d, 289; *Pemberton v. Lewis*, 243 N.C. 188, 90 S.E. 2d, 245, and cases cited.

In *Armfield v. Moore, supra,* Pearson, J., writing for the Court and referring to definition of estoppel, had this to say: "The meaning of which is, that when a fact has been agreed on or decided in a court of record, neither of the parties shall be allowed to call it in question, and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed * * * In other words, his mouth is shut, and he shall not say, that is not true which he had before in a solemn manner asserted to be the truth." This is cited with approval in numerous cases, some of which are cited in the Crawford case.

Moreover, the essential fact to be found to enable an administrator to maintain a proceeding to sell land to make assets, G.S. 28-81, *et seq,* is the insufficiency of personal property to pay the debts of the decedent. Therefore there must be definite statements in the petition as to the amount of debts outstanding against the estate, and as to the personal estate, and the application therefor, to enable the court to see that there is such insufficiency of personal property. And the respondents, heirs at law, who are required to be made parties to the proceeding, have the right to plead any defense against a debt for which sale of the lands are to be made. *Smith v. Brown*, 101 N.C. 347, 7 S.E., 890; *Matthews v. Peterson*, 150 N.C. 134, 63 S.E. 721; *Alexander v. Galloway*, 239 N.C. 554, 80 S.E. 2d, 369.

And much more, *a fortiori,* if the respondents have the right to challenge the validity of such a debt, they have the right to admit the validity of it. Such admission becomes material to the proceeding. And when solemnly made in pleading it should be effective.

Indeed, as stated by this Court in *Craver v. Spaugh, supra,* opinion by Barnhill, J., later C. J., " ' It is a fundamental principle of jurisprudence that material facts or questions which

were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment therein, and that such facts or questions become *res judicata* and may not again be litigated in a subsequent action between the same parties * * * regardless of the form the issue may take in the subsequent action.' 30 A.J. 920." And, continuing, it is said: "This rule prevails as to matters essentially connected with the subject matter of the litigation and necessarily implied in the final judgment, although no specific finding may have been made in reference thereto. If the record of the former trial shows that the judgment could not have been rendered without deciding the particular matter, it shall be considered as having settled that matter as to all future actions between the parties. 30 A.J. 929."

The Court is not unmindful of the decisions in the cases of *Latta v. Russ* (1860), 53 N.C. 111; *Austin v. Austin,* (1903), 132 N.C. 262; 43 S.E. 827; 95 A.S.R., 637; 128 A.L.R. 472, at 527, anno.; *Trust Co. v. Stone* (1918), 176 N.C. 270, 97 S.E. 8; *In re Gorham* (1919) 177 N.C. 271, 98 S.E. 717. But it is considered that they are distinguishable in factual situations from that in hand.

III. The fifth question, stated by appellant as involved on this appeal, is this: "Did the court err in failing to comply with G.S. 1-180 on the third issue relating to damages, and particularly by failing to state any measure of damages, by failing to state the evidence as to each element of damage and by failing to apply the law to the evidence?" This question is founded upon assignments of error 69, 73 and 74, which are based upon Exceptions 101, 106 and 107, respectively.

A reading of the charge indicates that this challenge to its correctness is properly directed.

Since there must be a new trial, it is deemed inexpedient to launch upon any extended discourse on the subject to which this question relates.

And, too, matters to which other questions raised and assignments of error entered relate may not then recur. Hence the opinion will not be unduly lengthened to no useful purpose. Nevertheless, let it be noted that further rights of the parties in respect to defendant's pleas of estoppel are reserved for consideration and determination by the court in the light of evidence to be adduced upon the new trial.

For errors pointed out there must be a

New trial.