IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-355

Filed: 7 January 2020

Buncombe County, No. 18-CVS-1731

STATE OF NORTH CAROLINA, ex. rel., MICHAEL S. REGAN, SECRETARY, NORTH CAROLINA DEPARTMENT OF ENVIRONMENTAL QUALITY, DIVISION OF WASTE MANAGEMENT, Plaintiff,

v.

WASCO, LLC, Defendant.

Appeal by Defendant from orders denying Defendant's motion to dismiss, entering summary judgment for Plaintiff, and permanently enjoining Defendant entered 27 November 2018 by Judge R. Gregory Horne in Buncombe County Superior Court. Heard in the Court of Appeals 30 October 2019.

*Attorney General Joshua H. Stein, by Assistant Attorney General Michael Bulleri, for the State.*

*Troutman Sanders LLP, by Christopher G. Browning, Jr., Sean M. Sullivan, and Lisa Zak, for the Defendant.*

BROOK, Judge.

WASCO, LLC, ("Defendant") appeals from trial court orders denying Defendant's motion to dismiss, entering summary judgment for the North Carolina Department of Environmental Quality, Division of Waste Management ("Plaintiff"), and permanently enjoining Defendant. Because this Court has previously held that Defendant is liable for submitting a Part B post-closure permit as the operator of a

facility under the Resource Conservation and Recovery Act ("RCRA") in *WASCO LLC v. N.C. Dep't of Env't & Nat. Res.*, 253 N.C. App. 222, 799 S.E.2d 405 (2017) ("*WASCO I*"), we affirm.

## I. Factual Background

The pertinent factual background is fully laid out in *WASCO I*, and we repeat only the facts necessary to decide the instant appeal.

The facility at issue is a former textile manufacturing facility located in Swannanoa, North Carolina ("the Facility"). *WASCO I*, 253 N.C. App. at 225, 799 S.E.2d at 408. Prior to Defendant's purchase of the Facility, underground tanks were used to store virgin and waste perchloroethylene ("PCE"), a dry-cleaning solvent. *Id.* PCE leaked from the tanks and contaminated the soil. *Id.* The tanks were removed, and the resulting pits were filled with the contaminated soil. *Id.*

In 1990, the then-operator of the facility, Asheville Dyeing & Finishing ("AD&F"), a division of Winston Mills, Inc., entered into an Administrative Order on Consent with Plaintiff that set forth a plan to close the Facility. *Id.* The Facility was certified closed in 1993. *Id.* In 1995, Winston Mills and its parent corporation, McGregor Corporation, sold the site to Anvil Knitwear, Inc. and provided Anvil Knitwear indemnification rights for "environmental requirements." *Id.* Culligan International Company ("Culligan") co-guaranteed Winston Mills's performance of indemnification for environmental liabilities. *Id.*

In 1998, Defendant's predecessor in interest, United States Filter Corporation, acquired stock of Culligan Water Technologies, Inc., which owned Culligan. *Id.* Defendant then provided Plaintiff with a trust fund to the benefit of Plaintiff as financial assurance on behalf of Culligan, as well as an irrevocable standby letter of credit for the account of AD&F. *Id.* In 2004, Defendant sold Culligan and agreed to indemnify the buyer as to identified environmental issues at the Facility. *Id.* at 225-26, 799 S.E.2d at 408. From that point forward, Part A permit applications signed by Defendant's director of environmental affairs identified Defendant as the operator of the facility. *Id.* at 226, 799 S.E.2d at 408.

In 2007, Defendant received a letter from Plaintiff indicating that the Facility required corrective action to develop a groundwater assessment plan to address the migration of hazardous waste in the groundwater. *Id.* Defendant, its hired consultant, and Plaintiff continued to develop a groundwater assessment plan. *Id.* The following year, in 2008, Anvil Knitwear sold the property to Dyna-Diggr, LLC.[1] *Id.* At that point, both Defendant and Anvil disclaimed responsibility for post-closure actions at the Facility. *Id.*

Litigation resulting from the disagreement regarding responsibility for post-closure actions resulted in the decision reached by this Court in *WASCO I*.

II. Procedural Background

---

[1] In various filings in the record, the current owner of the facility is called "Dyna-Diggr," "Dyna Diggr," "Dyna-Digr," and "Dyna Digr."

In *WASCO I*, this Court held that Defendant was liable for securing a post-closure permit as an operator of the Facility. *WASCO I*, 253 N.C. App. at 237, 799 S.E.2d at 415. After this Court's unanimous decision in *WASCO I,* Defendant filed a Petition for Discretionary Review under N.C. Gen. Stat § 7A-31 in the North Carolina Supreme Court. *WASCO LLC v. N.C. Dep't of Env't & Nat. Res., Div. of Waste Mgmt.*, 370 N.C. 276, 805 S.E.2d 684, 685 (2017). The Supreme Court denied review. *Id.*

Despite the decision of this Court, Defendant did not seek a post-closure permit as required by 40 C.F.R. § 270.10(b) and 40 C.F.R. § 270.1, incorporated by reference in 15A NCAC 13A.0113. Instead, Defendant filed a Petition for Rule Making before the Environmental Management Commission ("EMC"), seeking to change the definition of the term "operator" in the North Carolina Administrative Code. EMC denied Defendant's petition on 8 March 2018. Defendant then filed a Petition for Declaratory Ruling before the EMC on 8 December 2017, requesting a ruling that Plaintiff "lacks the authority to require WASCO to obtain a post-closure permit or a post-closure order for the Facility pursuant to 15A NCAC [13A].0113(a) (adopting 40 C.F.R. § 270.1(c))." Defendant amended this petition on 27 February 2018 seeking the same ruling. On 3 March 2018, Defendant filed a new Petition for Declaratory Ruling before the EMC, seeking the same ruling. Defendant withdrew the first amended Petition for Declaratory Ruling, and the new Petition was scheduled for hearing at the time Plaintiff commenced this action.

On 18 April 2018, Plaintiff filed a Complaint and Motion for Preliminary and Permanent Injunctive Relief. Plaintiff sought a mandatory injunction requiring Defendant to, among other things, "[s]ubmit, within 90 days of issuance of an Order, a complete application for a RCRA Part B post-closure permit in accordance with 40 CFR 270.10 addressing all of the applicable requirements of Chapter 40 of the Code of Federal Regulations and the State Hazardous Waste Program[.]"

Defendant filed a Motion to Dismiss on 9 July 2018, alleging that Plaintiff had "fail[ed] to join the current owner and operator of the Facility, Dyna-Diggr, LLC ('Dyna-Diggr') and Brisco, Inc. (an additional current operator of the Facility), as well as the former owners and operators of the Facility, as necessary parties."[2] Plaintiff then filed a Motion for Summary Judgment, alleging "that there are no disputed issues of material fact and that Plaintiff is entitled to judgment as a matter of law" because Defendant failed to comply with this Court's decision in *WASCO I* requiring Defendant to submit a Part B post-closure permit application under RCRA.

A hearing on the motions was held before Judge R. Gregory Horne on 31 October 2018. The trial court determined that Plaintiff had not failed to join any necessary parties and denied Defendant's motion to dismiss. The trial court made

---

[2] At the hearing on the motion to dismiss and motion for summary judgment, Defendant argued that Dyna-Diggr only must be joined as a necessary party. Despite identifying Brisco, Inc. as a current operator in its Motion to Dismiss, Defendant has not raised this argument with regard to any party other than Dyna-Diggr in its brief. Therefore, we deem this argument abandoned regarding any parties other than Dyna-Diggr. N.C. R. App. P. 28(a).

the following oral findings of fact and conclusions of law to support the denial of

Defendant's motion to dismiss and the grant of Plaintiff's motion for summary

judgment:

> THE COURT: All right, thank you. . . . the Court of Appeals and the Supreme Court often . . . talk about changing horses midstream in litigation. And oftentimes . . . they're talking about a situation in which there was not an issue raised in the trial courts, so as a result, the trial court didn't have an opportunity to consider or rule upon the issue. But prior to [] getting to the appellate courts and prior to hearing, [] the parties change horses or change legal theories, change legal strategies and bring up issues that were not brought up in trial court. Of course, appellate cases indicate that that is not allowed to be done.
>
> Now, I must again say that . . . I'm far from an expert in the area of the EPA . . . . This is an area that clearly is a specialty, even folks who are specialized in it, I think, would have frequent updates and interpretations throughout.
>
> However, initially, when I looked at it it appeared to me that the defendant WASCO, the plaintiff in the original case before the Court of Appeals, was changing horses midstream in that, although somewhat differently, . . . it was heard first with an administrative law judge, went through the trial court, and then went to the Court of Appeals and then not receiving relief, changed horses and repackaged and attempted to relitigate. I hear from WASCO that, in fact, they are looking at some new regulations that have come out that weren't present at the time.
>
> What this Court does understand is that this Court is bound by the decision of the North Carolina Appellate Courts, and the decision as I read it is clear. I had underlined and underscored a number of cases, the State

has quoted some, but indicated it's WASCO's responsibility to obtain a postclosure permit for the site that is at issue in the present case. And there's a quote—additionally, Part A permit – it's on page six. (As read) Application signed by WASCO's director of environmental affairs identified WASCO as the operator, and WASCO continued to pay consultants and take action at the site.

The [C]ourts in their conclusion indicate, (as read) We hold WASCO as an operator of a landfill for purposes of the postclosure permitting requirement at the site.

So it is the Court's belief and, indeed, that . . . upon petition for discretionary review, the North Carolina Supreme Court denying that, Court believes it is the law of the case at this time.

So that brings us to the present action in 18 CVS 1731 in which the department is seeking a motion for summary judgment. Court having considered the submissions, having respectfully considered the arguments of counsel, the Court would find and conclude that there remains no genuine issue of material fact, and that Plaintiff, then, the department and the division are entitled to judgment as a matter of law. Court therefore grants the summary judgment motion and requires WASCO to submit to [sic] this Part B postclosure permit application within 90 days of signing and filing of this order.

Following the hearing, the trial court entered an order denying Defendant's motion to dismiss on 12 December 2018 and an order entering summary judgment for Plaintiff. The order denying Defendant's motion to dismiss included the following findings and conclusions:

1. On April 18, 2017, the Court of Appeals issued a unanimous decision holding that Defendant "WASCO was the party responsible for and directly involved in the post-

closure activities subject to regulation" at the former Asheville Dyeing & Finishing Plant located at 850 Warren Wilson Road, Swannanoa ("the Facility") in Buncombe County. *WASCO LLC v. N.C. Dep't of Env't and Natural Res.*, No. COA 16 414 (N.C. Ct. App. Apr. 18, 2017). The Court of Appeals framed the issue as follows: "It is WASCO's responsibility to obtain a post-closure permit for the Site that is at issue in the present case." *Id* at page 5. The Court of Appeals opinion affirmed the final order and judgment of the trial court and held that "WASCO is an operator of a landfill for purposes of the post-closure permitting requirement at the Site". *Id* at page 22.

2. WASCO was the only party to this Court of Appeals' decision other than the Department of Environmental Quality.

3. On November 1, 2017, the North Carolina Supreme Court denied WASCO's petition for discretionary review of the decision of the Court of Appeals.

4. WASCO remains the operator of the Facility and, as the issue was framed in the Court of Appeals' decision, is responsible for post-closure care and for obtaining a post-closure permit for the Facility.

5. In the present action, the State is seeking to enforce the decision of the Court of Appeals against WASCO. WASCO has not obtained the required permit and has ceased performing any post-closure activities at the Facility.

6. WASCO's responsibilities as an operator are distinct from the responsibilities of the Facility's owner, or of past owners or operators. The owner of the Facility has its own responsibilities under the State Hazardous Waste Rules that arise from its status as owner of the Facility, which are not affected by the present action.

7. Liability under the State Hazardous Waste Rules is joint and several.

8. Enforcing the Court of Appeals' decision against WASCO will not directly affect the interests of any person who is not a party to this action.

Upon these findings and conclusions, the trial court denied Defendant's motion to dismiss.

The order granting summary judgment included the following findings and conclusions:

1. On April 18, 2017, the Court of Appeals issued a unanimous decision holding that Defendant "WASCO was the party responsible for and directly involved in the post-closure activities subject to regulation" at . . . ("the Facility") in Buncombe County. . . . The Court of Appeals framed the issue as follows: "It is WASCO's responsibility to obtain a post-closure permit for the Site that is at issue in the present case." . . . The Court of Appeals opinion affirmed the final order and judgment of the trial court and held that "WASCO is an operator of a landfill for purposes of the post-closure permitting requirement at the Site." . . . Thus, the Court of Appeals' ruling obligated WASCO to comply with the post-closure permitting obligations at the Facility under the Resource Conservation and Recovery Act ("RCRA"), as incorporated and adopted by the North Carolina Solid Waste Management Act, Chapter 130A, Article 9 of the North Carolina General Statutes, and the rules promulgated thereunder and codified in Subchapter 13A of Title 15A of the North Carolina Administrative Code (collectively, "the State Hazardous Waste Program").

2. The North Carolina Supreme Court denied WASCO's Petition for Discretionary Review of the Court of Appeals' decision on November 1, 2017, establishing the Court of Appeals' decision as the final ruling in this matter.

3. In the year since, WASCO has not submitted a Part B permit application for a post-closure permit for the Facility

pursuant to 40 CFR 270.1 and 40 CFR 270.10, adopted by reference at 15A NCAC 13A.0113. WASCO has since entry of the order ceased all activity at the Facility. WASCO has stated in its briefing in response to the instant motion that "WASCO is not now—nor does it have any intention of— taking any further action of any kind at the Facility."

4. All of the arguments raised by WASCO in response to the Department's motion were raised, or could have been raised, in the prior litigation culminating in the decision of the Court of Appeals. WASCO's arguments are therefore barred by the doctrines of res judicata, estoppel, and the law of the case.

5. Recent changes in the rules governing generators of hazardous waste have no bearing on WASCO's status and responsibilities as an operator of the Facility. Moreover, these new rules do not retroactively alter the fact that the Facility was closed as a landfill and is subject to post closure regulation, including permitting requirements, under RCRA and the State Hazardous Waste Program. This too is res judicata and the law of the case, and WASCO is estopped from relitigating these issues.

6. WASCO remains the operator of the Facility and, as the issue was framed in the Court of Appeals' decision, is responsible for post-closure care and for obtaining a post-closure permit for the Facility.

On these findings and conclusions, the trial court granted Plaintiff's motion for summary judgment.

The court then issued an injunction requiring that "[w]ithin ninety (90) days of entry of this Order, WASCO shall submit a RCRA Part B post-closure permit application for the Facility to the Department." The injunction required that "WASCO shall in good faith make best efforts to submit this application in an

approvable form" and that "WASCO shall work diligently and in good faith, using best efforts, to correct as expeditiously as possible any deficiencies identified by the Department in the permit application submitted[.]"

Defendant properly noticed appeal from the denial of its motion to dismiss, the grant of summary judgment, and the injunction on 27 December 2018. The same day Defendant noticed appeal, it filed a motion for reconsideration and motion to stay with the trial court "request[ing] that the Court reconsider the Orders and stay their effectiveness while such reconsideration occurs, or, alternatively, stay the effectiveness of the Orders pending WASCO's appeal of the same." On 23 January 2019, the trial court denied Defendant's motion to stay. It also denied Defendant's motion for reconsideration for lack of jurisdiction. On 1 August 2019, Plaintiff submitted a supplement to the appellate record, and Defendant filed a Motion to Strike Appellee's Record Supplement on 19 August 2019.

### III. Jurisdiction

Jurisdiction lies with this Court as an appeal from a final judgment under N.C. Gen. Stat. § 7A-27(b)(1).

### IV. Analysis

Defendant argues that the trial court erred in failing to dismiss Plaintiff's claim as moot, in failing to dismiss the claim for failure to join Dyna-Diggr as a necessary party, in granting summary judgment for Plaintiff, and in issuing an

injunction ordering that Defendant secure a post-closure permit. We address each claim in turn.

## A. Denial of Motion to Dismiss

### i. Standard of Review

The denial of a motion to dismiss for failure to join a necessary party is reviewed as a question of law. *Merrill v. Merrill*, 92 N.C. 657, 660 (1885). "[W]e review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found." *State v. Rooks*, 196 N.C. App. 147, 150, 674 S.E.2d 738, 740 (2009) (citation omitted). "We review the trial court's findings of fact to determine whether they are supported by competent record evidence[.]" *Id.* (internal marks and citation omitted).

### ii. Merits

#### 1. Mootness

Defendant argues that because EMC promulgated new regulations affecting generators of hazardous waste, Plaintiff's "directive that [Defendant] must apply for a RCRA Part B Permit became moot[,]" and that the superior court erred in failing to dismiss Plaintiff's action as moot. However, Defendant's liability as an operator was decided by this Court in *WASCO I*, and nothing about Defendant's liability as an operator has changed subsequent to that opinion. Therefore, we reject Defendant's argument according to the doctrine of the law of the case and judgment by estoppel,

explained in *Poindexter v. First Nat'l Bank of Winston Salem*, 247 N.C. 606, 101 S.E.2d 682 (1958): "[W]hen a fact has been agreed on or decided in a court of record, neither of the parties shall be allowed to call it in question, and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed[.]" *Id.* at 618, 101 S.E.2d at 691.

"Owners and operators of . . . landfills . . . must have post-closure permits . . . for the 'treatment,' 'storage,' and 'disposal' of any 'hazardous waste' as identified or listed in [the statute]." 40 C.F.R. § 270.1(c) (2018). In *WASCO I*, this Court held "WASCO is an operator of a landfill for purposes of the post-closure permitting requirement at the Site." 253 N.C. App. at 237, 799 S.E.2d at 415. The Facility "was certified closed as a landfill in 1993." *Id.* at 231, 799 S.E.2d at 411. Therefore, as an operator of a landfill, Defendant "must have [a] post-closure permit[]" for the Facility. *Id.* (quoting 40 C.F.R. § 270.1(c) (incorporated by reference in 15A NCAC 13A.01139a)).

Generators are separately defined as "any person, by site location, whose act, or process produces 'hazardous waste' identified or listed in 40 CFR part 261." 40 C.F.R. § 270.2(b)(2) (2018). Defendant points to the Hazardous Waste Generator Improvements Rule, 81 Fed. Reg. 85732 (Nov. 28, 2016), adopted by EMC as of 1 March 2018, in arguing its responsibilities have somehow changed. 32 N.C. Reg. 738 (rule submitted for approval by Rules Review Commission); 32 N.C. Reg. 1803

(approval of Rule by Rules Review Commission). The Hazardous Waste Generator

Improvements Rule was promulgated

> to improve compliance and thereby enhance protection of human health and the environment[;] . . . revise certain components of the hazardous waste *generator* regulatory program; . . . provide greater flexibility for hazardous waste *generators* to manage their hazardous waste in a cost-effective and protective manner; reorganize the hazardous waste *generator* regulations to make them more user-friendly and thus improve their usability by the regulated community[.]

81 Fed. Reg. 57918 (emphasis added).

In *WASCO I*, this Court did not determine Defendant's liability as a hazardous

waste *generator* but rather as an *operator* of a landfill. 253 N.C. App. at 237, 799

S.E.2d at 415. It made this determination under 40 C.F.R. § 270.1(c), which remains

in effect in the same form as when *WASCO I* was decided. The Hazardous Waste

Generator Improvements Rule has no bearing on Defendant's liability as an operator

of a landfill under a distinct statute.

Our conclusion in *WASCO I* is the law of the case. That doctrine provides that

"once an appellate court has ruled on a question, that decision becomes the law of the

case and governs the question both in subsequent proceedings in a trial court and on

subsequent appeal." *Weston v. Carolina Medicorp, Inc.,* 113 N.C. App. 415, 417, 438

S.E.2d 751, 753 (1994); *see also In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30,

37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, . . . a

subsequent panel of the same court is bound by that precedent, unless it has been

overturned by a higher court."). Defendant "therefore is foreclosed from relitigating the question of [its liability as an operator] in this or any other subsequent proceeding. Furthermore, under general rules of estoppel by judgment, [Defendant] is similarly precluded from relitigating an issue adversely determined against him." *Weston*, 11 N.C. App. at 418, 438 S.E.2d at 753. Finally, the recently promulgated generator rule does nothing to change these legal realities.

## 2. Failure to Join Necessary Party

Defendant also contends that the trial court erred in failing to dismiss the complaint for failure to join a necessary party, Dyna-Diggr, the current owner of the Facility. North Carolina Rule of Civil Procedure 19 provides that "those who are united in interest must be joined as plaintiffs or defendants[.]" It provides also that

> [t]he court may determine any claim before it when it can do so without prejudice to the rights of any party or to the rights of others not before the court; but when a complete determination of such claim cannot be made without the presence of other parties, the court shall order such other parties summoned to appear in the action.

N.C. Gen. Stat. § 1A-1, Rule 19(b) (2017). "A person is a necessary party to an action when he is so vitally interested in the controversy involved in the action that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence as a party." *Law Offices of Mark C. Kirby, P.A. v. Indus. Contractors, Inc.*, 130 N.C. App. 119, 124, 501 S.E.2d 710, 713 (1998); *see also Boone v. Rogers*, 210 N.C. App. 269, 270-71, 708 S.E.2d 103, 105 (2011) (explaining

that necessary parties have "material interests . . . [that] will be directly affected by an adjudication of the controversy." (citation omitted)); *Wall v. Sneed*, 13 N.C. App. 719, 724, 187 S.E.2d 454, 457 (1972) ("Necessary parties are those persons who have rights which must be ascertained and settled before the rights of the parties to the suit can be determined." (citation omitted)).

The relevant regulation provides that "[w]hen a facility or activity is owned by one person but is operated by another person, it is the operator's duty to obtain a permit, except that the owner must also sign the permit application." 40 C.F.R. § 270.10(b) (2018) (incorporated by reference at 15A NCAC 13A.0113(b)). Defendant asserts that because Dyna-Diggr, as the current owner of the Facility, "must also sign the permit application[,]" it is a necessary party to a suit regarding Defendant's duties to obtain a permit as the operator of the facility. Defendant, however, fails to grapple with the impact that joint and several liability has on the current controversy. Accordingly, we disagree.

First, federal courts interpreting RCRA generally "impose[] . . . joint and several liability" on responsible parties such as owners and operators. *United States v. Ne. Pharm. & Chem. Co., Inc.*, 810 F.2d 726, 732 n.3 (8th Cir. 1986); *see also United States v. Ottati & Goss, Inc.*, 630 F. Supp. 1361, 1396 (D.N.H. 1985) (holding multiple defendants jointly and severally liable under RCRA); *United States v. Conservation Chem. Co.*, 619 F. Supp. 162, 199 (W.D. Mo. 1985) ("Congress . . . has authorized the

imposition of joint and several liability to ensure complete relief [under RCRA.]"). Defendant cannot prevail in asserting that Dyna-Diggr is a necessary party because, in cases of joint and several liability, "the matter can be decided individually against one defendant without implicating the liability of other defendants." *Harlow v. Voyager Commc'ns V*, 348 N.C. 568, 571, 501 S.E.2d 72, 74 (1998). Here, Defendant's liability as an operator has been settled by *WASCO I*, and Dyna-Diggr was not a party to that case. Additionally, because Defendant's and Dyna-Diggr's liability is joint and several, Dyna-Diggr's "interests [will not] be directly affected by the adjudication of the controversy" between Defendant and Plaintiff such that Dyna-Diggr is a necessary party. *Durham Cty. v. Graham*, 191 N.C. App. 600, 604, 663 S.E.2d 467, 470 (2008).

We also note that granting a defendant's request for dismissal without prejudice is the appropriate remedy only where a necessary party cannot be joined; where the trial court identifies a necessary party, "the court shall order such other parties summoned to appear in the action." N.C. Gen. Stat. § 1A-1, Rule 19(b); *see Crosrol Carding Devs., Inc. v. Gunter & Cooke, Inc.*, 12 N.C. App. 448, 453 183 S.E.2d 834, 838 (1971) (reviewing trial court order joining necessary party). In other words, dismissal would have been an appropriate remedy only had the trial court determined Dyna-Diggr to be a necessary party and that Dyna-Diggr could not be joined as a party.

We hold the trial court did not err in denying Defendant's motion to dismiss for failure to join a necessary party.

## B. Grant of Summary Judgment

Defendant also contends that the trial court erred in granting Plaintiff's motion for summary judgment because there are unsettled factual issues in dispute. We disagree.

### i. Standard of Review

We review an order granting a motion for summary judgment *de novo*. *Charlotte-Mecklenburg Hosp. Auth. v. Talford*, 366 N.C. 43, 47, 727 S.E.2d 866, 869 (2012). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (internal marks and citation omitted).

### ii. Merits

A trial court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen Stat. §1A-1, Rule 56(c) (2017). Here, the only issue of material fact was whether Defendant's "failure to obtain a post-closure permit [wa]s a violation of 40 CFR 270.1(c) and 15A NCAC 13A .0113(a)."

This issue was decided in *WASCO I*. *See WASCO I*, 253 N.C. App. at 231-32, 799 S.E.2d at 411-12 (holding that WASCO is an operator of a landfill and therefore required by 40 C.F.R. § 270.1(c) (incorporated by reference in 15A NCAC 13A.0113(a)) to acquire a post-closure permit). As we have already explained, this holding is the law of the case, and the trial court correctly granted Plaintiff's motion for summary judgment because no issue of material fact remained to be settled.

### C. Order to Submit Permit Application

Defendant next argues that the trial court's order "requires WASCO to undertake something that cannot possibly be achieved in compliance with applicable law and EPA guidance[.]" Defendant specifically contends that because Dyna-Diggr may not live up to its obligation to "sign the permit application," *see* 40 C.F.R. § 270.10(b) ("When a facility or activity is owned by one person but is operated by another person, it is the operator's duty to obtain a permit, except that the owner must also sign the permit application."), Defendant will be subject to contempt sanctions. Defendant misconstrues the breadth of the trial court's order, which is narrower and more mindful of these particular circumstances than Defendant suggests. Accordingly, we disagree.

### i. Standard of Review

We review grants of equitable relief such as injunctions for an abuse of discretion. *Roberts v. Madison Cty. Realtors Ass'n, Inc.*, 344 N.C. 394, 401, 474 S.E.2d

783, 788 (1996). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Indeed, "[a] ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.*

### ii. Merits

Nothing in these facts or the law on point supports Defendant's argument of impossibility. Plaintiff cites *South Carolina v. United States*, 907 F.3d 742, 765 (4th Cir. 2018) in support of its argument that the trial court did not abuse its discretion in granting the injunction, in part because it is not impossible for Defendant to comply with the order. In that case, the U.S. Court of Appeals for the Fourth Circuit reviewed a district court's order requiring the Department of Energy ("DOE") to remove a metric ton of defense plutonium from South Carolina. *Id.* at 764. In determining that the district court did not abuse its discretion, the Fourth Circuit considered that "DOE failed to produce any evidence showing that its compliance with a two-year removal deadline was truly impossible." *Id.*

The same is true here. Defendant claims it would be impossible to comply with the order, presenting evidence of Dyna-Diggr's preemptive refusal to sign the permit application. But submitting an application without Dyna-Diggr's signature, in and

of itself, would not violate the order which requires only that Defendant act "in good faith [to] make best efforts to submit th[e] application in an approvable form."

Defendant's argument that it may face contempt sanctions is similarly unavailing. In *South Carolina*, the Fourth Circuit held that the lower court "did not abuse its discretion in ruling that DOE could raise its impossibility argument at a later time—if necessary—after the [i]njunction was entered." *Id.* at 765 (explaining that courts can compel compliance with statutory obligations and that parties may raise impossibility defenses at any subsequent contempt proceedings); *see Robertson v. Jackson*, 972 F.2d 529, 535 (4th Cir. 1992) ("In the event that a contempt order should be issued against the [defendant], the defense of impossibility of compliance would be available if he had done everything within his power to comply with the district court's order."). Relatedly, should Dyna-Diggr refuse to sign the application as the current owner of the Facility, Defendant will not be subject to contempt sanctions so long as it has "in good faith made best efforts to submit th[e] application in an approvable form." Further, should Defendant in good faith submit an RCRA Part B permit application absent Dyna-Diggr's signature, and should that application be denied, Defendant would be in compliance with the court's order should it continue to act in good faith and cooperate with Plaintiff, "work[ing] diligently . . . using best efforts[] to correct as expeditiously as possible any deficiencies identified by the Department[.]"

Finally, Defendant acknowledges that "North Carolina's environmental regulations provide a process when the owner of the facility refuses to cooperate—the issuance of an administrative order requiring appropriate action." *See* 42 U.S.C. § 6928(h) (2018). Should Defendant's permit application be denied for lack of Dyna-Diggr's signature, Plaintiff could initiate separate proceedings against Dyna-Diggr, proceedings which would not involve Defendant.

In short, only Defendant's refusal to comply with the court order, not Dyna-Diggr's inaction, could result in contempt sanctions against Defendant per the trial court order at issue. As such, we cannot hold that the injunction is "manifestly unsupported by reason." *White*, 312 N.C. at 777, 324 S.E.2d at 833 (1985).

### D. Motion for Reconsideration

Defendant argues, in the alternative, that this Court should remand this matter to the superior court for an advisory opinion on Defendant's motion for reconsideration.

Proper notice of appeal requires a party to "designate the judgment or order from which appeal is taken." N.C. R. App. P. 3(d). "Without proper notice of appeal, this Court acquires no jurisdiction." *Brooks v. Gooden*, 69 N.C. App. 701, 707, 318 S.E.2d 348, 352 (1984). "A jurisdictional default [] precludes the appellate court from acting in any manner other than to dismiss the appeal." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008).

Here, the trial court did not enter a judgment or order on Defendant's motion for reconsideration because jurisdiction was no longer vested with the trial court at the time Defendant filed its motion. As such, Defendant did not appeal from the denial of its Rule 60(b) motion. Therefore, jurisdiction is not properly with this Court to consider remand.

## V. Conclusion

The trial court correctly determined that this Court's decision in *WASCO I* settled the question of Defendant's liability as an operator of the Facility as the law of the case. No intervening developments have changed this reality; thus, we hold that the trial court did not err in failing to dismiss Plaintiff's complaint as moot. Nor did the trial court err in failing to dismiss Plaintiff's suit for failure to join a necessary party; Defendant's liability as the operator is separate from Dyna-Diggr's liability as the owner of the Facility. The trial court similarly did not err in entering summary judgment for Plaintiff because no genuine issues of material fact remained to be resolved; Defendant's liability as the operator of the Facility had been decided by this Court in *WASCO I*. Finally, its issuance of the injunction was within the trial court's discretion and does not require anything "impossible" of the Defendant. The trial court orders are affirmed.[3]

---

[3] We dismiss as moot Defendant's Motion to Strike Appellee's Record Supplement because, as the preceding illustrates, our decision does not require reliance upon the material Defendant requests be stricken.

AFFIRMED.

Judges TYSON and ARROWOOD concur.