JON-PAUL CRAIG, BY HIS MOTHER AND NEXT FRIEND, KIMBERLY CRAIG v. NEW HANOVER COUNTY BOARD OF EDUCATION AND ANNETTE REGISTER, IN HER OFFICIAL AND INDIVIDUAL CAPACITY

No. 484PA07

(Filed 18 June 2009)

## 1. Appeal and Error— appealability—denial of summary judgment—governmental immunity

The denial of a summary judgment motion by defendant board of education was interlocutory but appealable because the board raised the complete defense of governmental immunity, which affects a substantial right. Such immunity shields a defendant entirely from having to answer for its conduct and is more than a mere affirmative defense.

## 2. Immunity— negligence and constitutional claims against school board—summary judgment

Summary judgment for defendant board of education was correctly denied on direct colorable constitutional claims which arose from an assault in a school where there was also a negligence claim, the facts alleged and the damages sought were the same for both claims, and the defendant raised governmental immunity. Sovereign immunity entirely precludes plaintiff's common law claim, so that plaintiff does not have an adequate state law remedy, and allowing sovereign immunity to defeat plaintiff's colorable constitutional claims would defeat the purpose of *Corum v. University of North Carolina*, 330 N.C. 761.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review the decision of a divided panel of the Court of Appeals, 185 N.C. App. 651, 648 S.E.2d 923 (2007), reversing an order denying summary judgment for defendant entered on 15 December 2006 by Judge Paul L. Jones in Superior Court, New Hanover County. Heard in the Supreme Court 9 September 2008.

*Patterson Harkavy LLP, by Burton Craige for plaintiff-appellant.*

*Hogue Hill Jones Nash & Lynch, LLP, by David A. Nash, for defendant-appellee New Hanover County Board of Education.*

*Allison Schafer, Legal Counsel, for North Carolina School Boards Association, amicus curiae.*

CRAIG v. NEW HANOVER CTY. BD. OF EDUC.

[363 N.C. 334 (2009)]

HUDSON, Justice.

This case requires us to determine whether plaintiff's common law negligence claim, which will ultimately be defeated by governmental immunity because of its exclusion from defendant Board of Education's insurance coverage, provides an adequate remedy at state law. We hold that it does not and that plaintiff may therefore bring his colorable claims directly under the North Carolina Constitution. We reverse the Court of Appeals.

## PROCEDURAL BACKGROUND

Jon-Paul Craig[1] (plaintiff) filed this action on 20 September 2006 to recover monetary damages from the New Hanover County Board of Education (the Board) and Annette Register, Principal at Roland Grise Middle School, in her official and individual capacity. He alleged that the defendants failed to adequately protect him from a sexual assault, and enumerated four claims. The first was based on common law negligence. His other claims asserted that the Board deprived him of an education free from harm and psychological abuse, thereby violating three separate provisions of the North Carolina State Constitution: Article I, Section 15 (right to the privilege of education); Article I, Section 19 (no deprivation of a liberty interest or privilege but by the law of the land); and Article IX, Section 1 (schools and means of education shall be encouraged).

The Board moved for summary judgment on 22 November 2006 on all claims, asserting the absence of any genuine issue of material fact and raising other defenses including governmental immunity. By an order entered 15 December 2006, the trial court denied the Board's motion for summary judgment,[2] and the Board appealed to the Court of Appeals on 20 December 2006.

At the Court of Appeals, a unanimous panel held that the doctrine of sovereign immunity[3] defeats plaintiff's common law negligence claim because the Board does not carry insurance that would cover

---

1. Jon-Paul brings this action by his mother and next friend, Kimberly Craig. For ease of reference, we refer to Jon-Paul as plaintiff.

2. The trial court granted defendant Register's motion to dismiss all claims against her. Plaintiff has not appealed the dismissal of claims against defendant Register.

3. The Board is a county agency. As such, the immunity it possesses is more precisely identified as governmental immunity, while sovereign immunity applies to the State and its agencies. See Meyer v. Walls, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). In application here, the distinction is immaterial.

these claims and, thus, has never waived its immunity for the alleged injury. *Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ.*, 185 N.C. App. 651, 654-55, 648 S.E.2d 923, 925-26 (2007). Specifically, the Court of Appeals noted that the Board's excess liability insurance policy excluded coverage for any claims "arising out of or in connection with . . . sexual acts, sexual molestation, sexual harassment, sexual assault, or sexual misconduct of any kind; . . . [as well as] claims for negligent hiring, negligent retention, and/or negligent supervision." *Id.* at 654, 648 S.E.2d at 925. Thus, because the policy does not cover plaintiff's negligence claim, both statute and longstanding case law of this State establish that the Board has not waived immunity from suit. *See* N.C.G.S. § 115C-42 (2005) ("[S]uch immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort."); *Ripellino v. N.C. School Bds. Ass'n*, 158 N.C. App. 423, 428, 581 S.E.2d 88, 92 (2003) (holding that a school board's participation in the North Carolina School Boards Trust did not qualify as a purchase of liability insurance under the definition of N.C.G.S. § 115C-42), *cert. denied*, 358 N.C. 156, 592 S.E.2d 694-95 (2004).

However, the panel was divided regarding plaintiff's constitutional claims. While recognizing that direct claims under our State Constitution are allowed when a litigant possesses no adequate remedy at state law, the majority concluded that plaintiff's common law negligence claim is an adequate remedy at state law, and thus, the constitutional claims are barred. *Craig*, 185 N.C. App. at 655-57, 648 S.E.2d at 926-27. The dissenting opinion contended that plaintiff's negligence claim cannot be an "adequate" state remedy since governmental immunity completely defeats the claim. *Id.* at 657, 648 S.E.2d at 927 (Bryant, J., concurring in part, dissenting in part). By an order dated 6 March 2008, we granted certiorari to review the Court of Appeals decision only as to the issue raised in the dissenting opinion. *Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ.*, 362 N.C. 234, 659 S.E.2d 439 (2008); *see* N.C. R. App. P. 21(a)(2).

## FACTUAL BACKGROUND

Plaintiff, a mentally disabled student with below average communication and social skills, began attending Roland Grise Middle School in New Hanover County in the sixth grade. On 6 January 2004, when plaintiff was fourteen years old and in the eighth grade, an assistant principal from Roland Grise called his mother to inform her of "some sexual experimentation" that occurred in class between plaintiff and another boy. Plaintiff alleges that he did not consent to

the incident and that defendants are liable for failing to adequately protect him from sexual assault.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2007). Furthermore, when considering a summary judgment motion, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 James Wm. Moore, *Moore's Federal Practice* § 56.15[3], at 2337 (2d ed. 1971)). We review a trial court's order granting or denying summary judgment *de novo. See Builders Mut. Ins. Co. v. N. Main Constr.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006) (citing *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004)). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment" for that of the lower tribunal. *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citing *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002)). "The showing required for summary judgment may be accomplished by proving an essential element of the opposing party's claim . . . would be barred by an affirmative defense . . . ." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (citing *Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 21, 423 S.E.2d 444, 454 (1992)).

[1] Denial of a summary judgment motion is interlocutory and ordinarily cannot be immediately appealed. However, the appeal here is proper because the Board raises the complete defense of governmental immunity, and as such, denial of its summary judgment motion affects a substantial right. N.C.G.S. § 7A-27(d)(1) (2007); *see Bailey v. Gooding*, 301 N.C. 205, 209, 270 S.E.2d 431, 433 (1980) (explaining that "interlocutory decrees are immediately appealable only when they affect some substantial right" (citing *Veazey v. City of Durham*, 231 N.C. 354, 362, 57 S.E.2d 377, 381 (1950)).

As noted by the United States Supreme Court, such immunity is more than a mere affirmative defense, as it shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages. *See Mitchell v. Forsyth*, 472 U.S. 511, 525, 86 L. Ed. 2d 411, 424 (1985). Thus, unlike affirmative defenses explicitly listed in our

Rules of Civil Procedure, *see* N.C.G.S. § 1A-1, Rule 8(c) (2007), the denial of summary judgment on grounds of sovereign immunity is immediately appealable, though interlocutory, because it represents a substantial right, as "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526, 86 L. Ed. 2d at 425.

## ANALYSIS

**[2]** Plaintiff argues that his common law negligence claim is not an adequate remedy at state law because the doctrine of governmental immunity prevails against it. Consequently, he asserts that per this Court's decision in *Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992), he should be allowed to bring claims directly under our State Constitution that will not be susceptible to an immunity defense. We agree.

The practical effect of the Court of Appeals' holding otherwise would be to allow the doctrine of sovereign immunity to "stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights," exactly contrary to our prior holding in *Corum. Id.* at 785-86, 413 S.E.2d at 291. Indeed, the application of sovereign immunity to plaintiff's common law negligence claim is integral to our assessment here of the "adequacy" of plaintiff's state law remedy. Allowing sovereign immunity to defeat plaintiff's colorable constitutional claim here would defeat the purpose of the holding of *Corum.*

This Court could hardly have been clearer in its holding in *Corum*: "[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Id.* at 782, 413 S.E.2d at 289. In outlining the rationale for allowing such claims to proceed in the alternative, this Court further explained:

> The civil rights guaranteed by the Declaration of Rights in Article I of our Constitution are individual and personal rights entitled to protection against state action . . . . The fundamental purpose for [the] adoption [of the Declaration of Rights] was to provide citizens with protection from the State's encroachment upon these rights. Encroachment by the State is, of course, accomplished by the acts of individuals who are clothed with the authority of the State. The very purpose of the Declaration of Rights is to ensure

CRAIG v. NEW HANOVER CTY. BD. OF EDUC.

[363 N.C. 334 (2009)]

that the violation of these rights is never permitted by anyone who might be invested under the Constitution with the powers of the State.

*Id.* at 782-83, 413 S.E.2d at 289-90 (citation omitted). Nevertheless, this Court also addressed the inherent tension for the judicial branch in safeguarding against the encroachment of citizens' constitutional rights while also respecting the doctrine of sovereign immunity:

> The doctrine of sovereign immunity has been modified, but never abolished. It has been said that the present day doctrine seems to rest on a respect for the positions of two coequal branches of government—the legislature and the judiciary. Thus, courts have deferred to the legislature the determination of those instances in which the sovereign waives its traditional immunity.

> However, in determining the rights of citizens under the Declaration of Rights of our Constitution, it is the judiciary's responsibility to guard and protect those rights. The doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights. *It would indeed be a fanciful gesture to say on the one hand that citizens have constitutional individual civil rights that are protected from encroachment actions by the State, while on the other hand saying that individuals whose constitutional rights have been violated by the State cannot sue because of the doctrine of sovereign immunity.*

> It is also to be noted that individual rights protected under the Declaration of Rights from violation by the State are constitutional rights. Such constitutional rights are a part of the supreme law of the State. On the other hand, the doctrine of sovereign immunity is not a constitutional right; it is a common law theory or defense established by this Court . . . . *Thus, when there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail.*

*Id.* at 785-86, 413 S.E.2d at 291-92 (emphasis added) (internal citation omitted). The Court of Appeals' holding here constitutes precisely the type of "fanciful gesture" that this Court cautioned against in *Corum*.

Here, plaintiff's remedy cannot be said to be adequate by any realistic measure. Indeed, to be considered adequate in redressing a

constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim. Under the facts averred by plaintiff here,[4] the doctrine of sovereign immunity precludes such opportunity for his common law negligence claim because the defendant Board of Education's excess liability insurance policy excluded coverage for the negligent acts alleged. Plaintiff's common law cause of action for negligence does not provide an adequate remedy at state law when governmental immunity stands as an absolute bar to such a claim. But as we held in *Corum*, plaintiff may move forward in the alternative, bringing his colorable claims directly under our State Constitution based on the same facts that formed the basis for his common law negligence claim.

This holding does not predetermine the likelihood that plaintiff will win other pretrial motions, defeat affirmative defenses, or ultimately succeed on the merits of his case. Rather, it simply ensures that an adequate remedy must provide the possibility of relief under the circumstances. Here, the language of the excess liability insurance policy and corresponding applicability of sovereign immunity, make relief impossible on plaintiff's common law negligence claim, regardless of his ability to prove his case. Further, the facts presented here are distinguishable from a case in which a plaintiff has lost his ability to pursue a common law claim due to expiration of the statute of limitations, for example. Sovereign immunity entirely precludes this plaintiff from moving forward with his common law claim; without being permitted to pursue his direct colorable constitutional claims, he will be left with no remedy for his alleged constitutional injuries.

In *Corum*, state law did not provide for the type of remedy sought by the plaintiff; as such, this Court did not consider the relevance of sovereign immunity in its initial determination that he had no adequate remedy at state law. Nevertheless, as outlined above, this Court did clearly establish the principle that sovereign immunity could not operate to bar direct constitutional claims. Here, although plaintiff does have a negligence claim under the common law, such claim is automatically precluded by sovereign immunity due to the language of the excess liability insurance policy excluding coverage for negli-

4. In the original complaint, plaintiff specifically averred: "The constitutional claim for damages is plead [sic] as an alternative remedy, should the court find that sovereign immunity or governmental immunity in any of its various forms exists and, if it does exist, which the plaintiffs deny, then, in that event, plaintiffs have no adequate remedy at law and assert the constitutional violations pursuant to the laws of North Carolina."

CRAIG v. NEW HANOVER CTY. BD. OF EDUC.

[363 N.C. 334 (2009)]

gent acts. If plaintiff is not allowed to proceed in the alternative with his direct colorable constitutional claim, sovereign immunity will have operated to bar the redress of the violation of his constitutional rights, contrary to the explicit holding of *Corum*.

In addition to *Corum*, our holding here is likewise consistent with the spirit of our reasoning in *Sale v. State Highway & Public Works Commission*, 242 N.C. 612, 89 S.E.2d 290 (1955), and *Midgett v. North Carolina State Highway Commission*, 260 N.C. 241, 132 S.E.2d 599 (1963), *overruled on other grounds by Lea Co. v. North Carolina Board of Transportation*, 308 N.C. 603, 616, 304 S.E.2d 164, 174 (1983). In *Sale*, the plaintiffs sued the State Highway Commission after buildings that it had contracted with the plaintiffs to remove and reconstruct at a different site were destroyed by fire during the process. Although the plaintiffs had no statutory claim, this Court essentially allowed the plaintiff's negligence claim to proceed under the common law as an allegation of the State agency's violation of his constitutional rights. 242 N.C. at 620-22, 89 S.E.2d at 297-98. The State agency defendant in *Sale* contended that, based on the facts alleged in the plaintiff's complaint, it could not be sued under statute, in contract, or in tort, this last due to immunity at common law. Likewise, defendant Board of Education here argues that it is entitled to summary judgment because its sovereign immunity bars the claim on the facts alleged by plaintiff. The Court in *Sale*, when faced with a plaintiff who would otherwise receive no compensation for a constitutional wrong, recognized the significance of such a "violation of the fundamental law of this State," *id.* at 620, 89 S.E.2d at 297, and fashioned a remedy at common law to ensure an opportunity for the plaintiff to have the merits of his case heard and his injury redressed if successful on those merits.

Finally, in *Midgett*, the plaintiffs alleged a taking by the State Highway Commission after the agency constructed a highway, allegedly altering the natural flow of water and causing recurring flooding on the plaintiffs' private property. 260 N.C. at 248, 132 S.E.2d at 606. Under those circumstances, a statutory remedy to recover damages against the State Highway Commission existed and was ordinarily exclusive when available. Nevertheless, after finding that the plaintiffs' damages did not accrue until after the time for the statutory cause of action had expired, this Court allowed the plaintiffs to proceed with a constitutional claim for just compensation. *Id.* at 249-50, 132 S.E.2d at 607-08.

Thus, the type of remedy sought by the plaintiff in *Midgett* was precisely the same under either the statute or the constitutional claim asserted. Once again, when faced with a plaintiff who had suffered a colorable constitutional injury that could not be redressed through other means, this Court allowed the plaintiff to proceed with his direct constitutional claim because the state law remedy did not apply to the facts alleged by the plaintiff. *Id.* at 251, 132 S.E.2d at 608-09. Here, as in *Midgett*, the facts plaintiff alleges and the damages he seeks are also the same under either his common law negligence claim or his direct colorable constitutional claim. Moreover, although the timing of plaintiff's injury is not the issue, as it was in *Midgett*, the particular fact situation "would make a recovery by the plaintiff in the instant case impossible." *Id.*

In sum, we hold that plaintiff's common law negligence claim is not an "adequate remedy at state law" because it is entirely precluded by the application of the doctrine of sovereign immunity. To hold otherwise would be contrary to our opinion in *Corum* and inconsistent with the spirit of our long-standing emphasis on ensuring redress for every constitutional injury. Moreover, our constitutional rights should not be determined by the specific language of the liability insurance policies carried by the boards of education in each county. Allowing sovereign immunity to bar this type of constitutional claim would lead to inconsistent results across this State, as persons in some counties would find themselves in plaintiff's position, with no remedy at all for this type of injury, while others would be compensated. Instead, individuals may seek to redress all constitutional violations, in keeping with the "fundamental purpose" of the Declaration of Rights to "ensure that the violation of [constitutional] rights is *never* permitted by anyone who might be invested under the Constitution with the powers of the State." *Corum*, 330 N.C. at 782-83, 413 S.E.2d at 289-90 (emphasis added).

Accordingly, we reverse the Court of Appeals and affirm the trial court's denial of defendant's motion for summary judgment on plaintiff's direct colorable constitutional claims.

REVERSED.