GINSBERG v. BD. OF GOVERNORS OF UNIV. OF N.C.

[217 N.C. App. 188 (2011)]

TERRI GINSBERG, PLAINTIFF v. BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, DEFENDANT

No. COA11-506

(Filed 15 November 2011)

**Public Officers and Employees—university teaching assistant— tenure-track position—right to free speech—mere speculation**

The trial court did not err by granting summary judgment in favor of defendant Board of Governors on plaintiff teaching assistant's claim alleging a violation of her rights to freedom of speech. Plaintiff failed to establish beyond mere speculation that her statements were the motivating factor in the university's decision to not hire her for a tenure-track position.

Appeal by plaintiff from order entered 4 November 2010 by Judge Shannon R. Joseph in Orange County Superior Court. Heard in the Court of Appeals 26 October 2011.

*Rima N. Kapitan and Marty Rosenbluth, attorneys for plaintiff.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Gary R. Govert, for defendant.*

ELMORE, Judge.

Terri Ginsberg (plaintiff) appeals an order entered 4 November 2010 granting summary judgment in favor of the Board of Governors of the University of North Carolina (defendant). We affirm.

In December 2006, plaintiff interviewed with the Film Studies Department of North Carolina State University for a position as a Teaching Assistant Professor (TAP). The TAP position was for the term of one year, with the possibility of renewal. During the interview, plaintiff was informed that the department would later be seeking to hire a tenure-track Assistant Professor in film studies, to begin in the fall semester of 2008. Plaintiff was then offered the TAP position. On 16 August 2007, plaintiff began her TAP employment. Around this time, Dr. Akram Khater, Director of the Middle East Studies Program, encouraged plaintiff to apply for the tenure-track position of Assistant Professor in film studies.

Later that fall, plaintiff was asked to be a member of a committee to select films to be shown at the university's annual Middle Eastern

GINSBERG v. BD. OF GOVERNORS OF UNIV. OF N.C.

[217 N.C. App. 188 (2011)]

Film Series. On 24 October 2007, the film "Ticket to Jerusalem" was shown as part of that series. Plaintiff introduced the film by welcoming the audience on behalf of the Film Studies and Middle East Studies programs. Plaintiff concluded her introduction by stating that she was proud to be able to present the film to the audience, because the audience's presence "showed support for the airing of Palestinian cultural perspectives, especially those which promote Palestinian liberation." Other members of the committee felt as though plaintiff's statement conveyed the message to the audience that plaintiff believed that the audience's presence was a sign of their support of the Palestinian side of the Israeli-Palestinian political conflict. Dr. Marsha Orgeron, director of the Film Studies Program, felt as though plaintiff's statements were "counterproductive and potentially quite alienating." On 9 November 2007, Orgeron and Khater met with plaintiff. During that meeting, Khater expressed his concerns to plaintiff about her introductory statements. Khater explained that he was concerned about the effect her statements could have on the program and the purpose of the film series.

Also around this time, Orgeron served as the chair of a search committee for the tenure-track Assistant Professor position. The committee members were Orgeron, her husband Dr. Devin Orgeron, Dr. Jon Thompson, and Dr. Barbara Bennett. Plaintiff was initially on the list of applicants who would be considered for an interview. Plaintiff remained on the "first tier" list through November 2007. However, plaintiff was then moved further down the list, and eventually she was not included on the list of candidates who were screened for interviews. Orgeron explained that plaintiff was not screened for an interview because 1) plaintiff's area of research and interest in middle eastern film was not consistent with the area of focus desired by the department for the position, 2) plaintiff's experience and the quantity of her publications exceeded the scope of what would normally be expected of a beginning assistant professor in the department, and 3) the committee was concerned about the quality of the press of one of plaintiff's monographs. Ultimately, ten applicants were interviewed for the position. From those ten applicants, two candidates were brought to the university for an on-campus interview, and one of the candidates was hired.

On 8 October 2009, plaintiff filed suit against defendant alleging a violation of her rights to freedom of speech, religious liberty, and equal protection. On 10 September 2010, defendant filed a motion for summary judgment. On 4 November 2010, the trial court entered an

order granting defendant's motion for summary judgment. Plaintiff now appeals.

Plaintiff contends that the trial court erred in dismissing her speech claim by granting summary judgment in favor of defendant. "We review a trial court's order granting or denying summary judgment *de novo*. Under a *de novo* review, th[is] court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover County Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citations and quotations omitted). "Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The trial court must consider the evidence in the light most favorable to the non-moving party." *Crocker v. Roethling*, 363 N.C. 140, 142, 675 S.E.2d 625, 628 (2009) (quotations and citations omitted).

Plaintiff argues that there are questions of material fact regarding whether her constitutional right to freedom of speech was violated. We disagree. The core issue for this Court to review on appeal is whether there is any genuine issue of material fact that plaintiff's remarks were the cause of the university's decision to not hire plaintiff for the tenure-track position.

> In challenging an adverse employment decision for violation of constitutional rights, an employee establishes a prima facie case by showing that [the] protected activity was a substantial or motivating factor in the employer's decision. This prima facie showing shifts the burden to the employer to show, by a preponderance of the evidence, that the adverse decision would have been made in the absence of the protected activity.

*Lenzer v. Flaherty*, 106 N.C. App. 496, 509, 418 S.E.2d 276, 284 (1992) (citations omitted). "Although evidence of retaliation in a case such as this one may often be completely circumstantial, the causal nexus between protected activity and retaliatory discharge must be something more than speculation." *Id.* at 510, 418 S.E.2d at 284 (citation omitted).

Here, plaintiff argues that following her remarks, she had several negative interactions with other members of the faculty. Based on these interactions, plaintiff believes that she was not considered for the tenure-track position as a result of her remarks. However, plaintiff fails to establish any causal connection beyond mere speculation

GINSBERG v. BD. OF GOVERNORS OF UNIV. OF N.C.

[217 N.C. App. 188 (2011)]

between these interactions and the decision of the university to not hire her for the tenure-track position. In fact, the record does not show that plaintiff's remarks were a decisive factor in the committee's decision. The committee articulated several specific reasons why plaintiff was not hired for the position, none of which concerned plaintiff's remarks. Those reasons established in sum 1) that plaintiff's expertise was in a different area than the department desired for the position and 2) that plaintiff was overqualified for the position. Also, plaintiff remained on the "first tier" list of applicants through November 2007, weeks after her remarks were made. Furthermore, assuming *arguendo* that plaintiff was able to establish a prima facie case, it is apparent from the record that defendant has met its burden by showing that the adverse decision would have been made in the absence of the protected activity. Here, the university conducted an extensive and thorough search for the best candidate to fill the tenure-track position. Over the course of several weeks, the university narrowed the field of applicants to ten individuals. The university then conducted ten off-campus interviews, two on-campus interviews, and ultimately hired a candidate with different qualifications than plaintiff.

In sum, we conclude that plaintiff has failed to establish beyond mere speculation that her statements were the motivating factor in the university's decision to not hire her for a tenure-track position. Accordingly, we affirm the decision of the trial court.

Affirmed.

Judges BRYANT and STEPHENS concur.