IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-347

Filed 3 December 2024

Wake County, No. 21 CVS 14599

BLASTMASTER HOLDINGS USA, LLC d/b/a BLASTONE INTERNATIONAL, Plaintiff,

v.

LAND COAST INSULATION, INC.; MATRIX SERVICE, INC.; PIEDMONT NATURAL GAS COMPANY, INC. a/k/a PIEDMONT NATURAL GAS CO. INC.; and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendants.

Appeal by Defendants from Order entered 4 January 2024 by Judge G. Bryan Collins, Jr. in Wake County Superior Court. Heard in the Court of Appeals 24 September 2024.

*Lewis Brisbois Bisgaard & Smith LLP, by Eric G. Sauls, Jonathan M. Preziosi, pro hac vice, and Brian C. Deeney, pro hac vice, for Defendant-Appellants.*

*Smith Debnam Narron Drake Saintsing & Myers, LLP, by Byron L. Saintsing & Joseph A. Davies, for Plaintiff-Appellee.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Matrix Service, Inc. (Matrix), Piedmont Natural Gas Company, Inc. (PNG), and Fidelity and Deposit Company of Maryland (Fidelity) (collectively, Defendants) appeal from an Order granting Summary Judgment in favor of Plaintiff-Appellee Blastmaster Holdings USA (Blastmaster) and denying Defendants' Motion for Partial

Summary Judgment. The Record before us tends to reflect the following:

On or about 30 April 2019, Matrix entered into a contract with PNG (the Primary Contract) to perform certain engineering, procurement, and construction services for PNG's Robeson County LNG Peak-Shaving Facility (the Project). On 3 July 2019, Matrix filed a Notice of Contract with the Robeson County Clerk of Court. However, Matrix has never provided any evidence a Notice of Contract was posted at the Project site at any time. Matrix entered into a Subcontract Construction Agreement with Land Coast Insulation, Inc. (Land Coast) on 21 January 2021 for Land Coast to provide labor and materials for the Project.

Land Coast then entered into a Credit Application with Blastmaster, pursuant to which Blastmaster provided Land Coast with sandblasting abrasive and equipment, rental of sandblasting equipment, and related materials and/or labor for use on the Project. Pursuant to the Credit Agreement, between 22 February and 23 August 2021, Land Coast ordered a total of $323,050.47 in sandblasting services and rental equipment from Blastmaster for use on the Project. During the course of Land Coast's work on the Project, it submitted periodic invoices to Matrix for the labor and materials it had furnished in a given period. With each invoice, Land Coast also provided a Subcontractor's Partial Lien Waiver and Release. The partial lien waivers stated:

> [Land Coast], in consideration of payment in the amount of $ [invoice amount] and contingent only upon the receipt of payment, waives and releases any right which it now has [or] may

have in the future to claim a mechanics' lien or any other lien rights, and waives and releases all other claims or actions of any kind (whether billed or unbilled) against (a) the real property on which the Project is located; (b) the improvements and other property located thereon; and (c) Contractor and Owner and their partners, parents, members, subsidiaries and affiliates, at all tiers[.]

Under the partial lien waivers, Land Coast certified it had paid all of its subcontractors, suppliers, and employees for the labor and materials connected to the Project. Land Coast submitted the relevant invoices and partial lien waivers on 24 February 2021, 23 March 2021, 25 May 2021, 28 May 2021, 9 July 2021, and 2 August 2021. Matrix terminated Land Coast from the Project for cause on 23 August 2021.

On 14 September 2021, Blastmaster filed and served a Claim of Lien on Real Property and a Notice of Claim of Lien Upon Funds to Matrix and PNG, asserting a lien on real property in the amount of $323,050.47, plus interest and costs. Matrix then executed a Release of Lien Bond with Fidelity. At the time Blastmaster filed its Claim of Lien, Matrix's work on the Project was ongoing. As of 16 September 2021, two days after Blastmaster filed and served a Claim of Lien and Notice of Claim of Lien Upon Funds, Matrix had three outstanding invoices with PNG: one for $2,500,000.00; another for $164,476.81; and a third for $5,511,084.88—totaling $8,175,561.69.

On 28 October 2021, Blastmaster filed a Complaint in Wake County District Court against Land Coast, Matrix, and PNG, alleging breach of contract, claim of lien on real property, wrongful payment by PNG to Matrix, and wrongful payment by

Matrix to Land Coast. On 3 December 2021, Blastmaster filed an Amended Complaint adding Fidelity as a defendant and making an additional allegation of claim on corporate surety bond to discharge a statutory lien. Matrix and PNG filed their Answers on 4 January 2022, and Fidelity filed its Answer on 7 January 2022. In its Answer, Matrix filed a counterclaim against Blastmaster. Blastmaster filed a Motion to Dismiss Matrix's counterclaim on 25 January 2022. Matrix and PNG filed their Answers to the Amended Complaint on 26 January 2022. On 15 February 2022, Blastmaster filed a Renewed Motion to Dismiss Matrix's counterclaim.

This matter was transferred to Wake County Superior Court by consent order on 9 March 2022. On 12 May 2022, the trial court denied Blastmaster's Renewed Motion to Dismiss Matrix's Counterclaim. Blastmaster filed a Motion for Summary Judgment on 20 March 2023. After a continuance, Defendants filed a Motion for Partial Summary Judgment against Blastmaster on 10 October 2023. The summary judgment Motions came on for hearing on 16 November 2023. On 4 January 2024, the trial court entered an Order granting Blastmaster's Motion for Summary Judgment and denying Defendants' Motion for Partial Summary Judgment. The Order awarded Blastmaster a subrogation lien in the principal amount of $323,050.47 with 18% interest per annum from 14 April 2021 until the date of the Order, and an interest rate of 8% per year beginning after entry of the Order until paid in full. Defendants timely filed Notice of Appeal on 11 January 2024.

## **Issue**

The dispositive issue on appeal is whether the trial court erred by granting Summary Judgment for Blastmaster based on: (I) its application of N.C. Gen. Stat. § 44A-23(c); or (II) the existence of genuine issues of material fact.[1]

## Analysis

I.      Construction Lien Statute

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted); *see also Rawls & Assocs. v. Hurst*, 144 N.C. App. 286, 289, 550 S.E.2d 219, 222 (2001) ("A summary judgment motion should be granted when, based upon the pleadings and supporting materials, the trial court determines that only questions of law, not fact, are to be decided." (citation omitted)). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation and quotation marks omitted).

This Court has recently addressed subrogation lien rights of second- and third-

---

[1] Defendants additionally contend the trial court erred by denying their Motion for Partial Summary Judgment seeking dismissal of Blastmaster's claim for a subrogation lien on real property. Because we conclude the trial court did not err by granting Blastmaster's Motion for Summary Judgment, we do not reach this issue.

tier subcontractors arising from the same underlying Project in *Atlantech Distribution, Inc. v. Land Coast Insulation, Inc., et al*, _ N.C. App. _, 905 S.E.2d 224 (2024). There, the Court considered the caselaw around subrogation lien rights and its interaction with the statutes governing subcontractors' lien rights and property owners' liability when a general contractor or subcontractor fails to pay its subcontractor. We recognized the General Assembly's enactment of N.C. Gen. Stat. § 44A-23 as creating statutory mechanisms by which a property owner may protect itself from a risk of double payment to contractors and subcontractors, including the use of lien waivers. Indeed, in that case, the same Defendants raised identical arguments as they do here. This Court rejected those arguments, concluding "partial lien waivers do not extinguish a subcontractor's subrogation rights; however, a partial lien waiver may limit the amount of a subcontractor's claim to the amount remaining on the primary contract following the latest partial lien waiver if that amount is less than the amount owed to the subcontractor." *Id.* at 229 (citing *Vulcan Materials Co. v. Fowler Contracting Corp.*, 111 N.C. App. 919, 922, 433 S.E.2d 462, 464 (1993) and *Elec. Supply Co. of Durham, Inc. v. Swain Elec. Co., Inc.*, 328 N.C. 651, 661, 403 S.E.2d 291, 297 (1991)).

Thus, consistent with our recent precedent, we conclude Blastmaster retained its subrogation lien rights to the extent its claim as of the latest partial lien waiver issued was less than the amount remaining on the Primary Contract. Here, Blastmaster filed and served a Claim of Lien and a Notice of Claim of Lien Upon

Funds to Matrix and PNG on 14 September 2021 for $323,050.47. Land Coast submitted its last partial lien waiver before its termination on or about 30 July 2021. Although Matrix submitted another partial lien waiver to PNG on 16 September 2021, Blastmaster had already filed and served its Claim of Lien; thus, we consider only the last partial lien waiver preceding Blastmaster's Claim of Lien. It is undisputed that following Land Coast's last partial lien waiver, Matrix had three outstanding invoices totaling $8,175,561.69. Thus, because the amount of Blastmaster's claim was less than the amount outstanding on the Primary Contract when Blastmaster perfected its Subrogation Lien, Blastmaster was entitled to lien rights for the entirety of its claim.

Additionally, Defendants note a different statute—N.C. Gen. Stat. § 22B-5—differentiates partial lien waivers from final lien waivers.[2] They then assert: "Being thoroughly familiar with the construction industry's reliance upon both interim lien waivers and final lien waivers . . . , the Legislature would have used the phrase 'final lien waiver' in N.C. Gen. Stat. § 44A-23(c) if that were the only type of waiver that could affect a lower tier subcontractor's right to assert a subrogated lien against real property." We disagree.

Section 22B-5 provides in full:

---

[2] Despite this argument being only briefly raised by Defendants to this Court in *Atlantech*—and then only in a Reply Brief—it, nevertheless, features heavily in their pending Petition for Discretionary Review to the North Carolina Supreme Court. Defendants now raise substantially the same argument here as in their pending Petition for Discretionary Review.

(a) Provisions in lien waivers, releases, construction agreements as defined in G.S. 22B-1(f)(1), or design professional agreements as defined in G.S. 22B-1(f)(5) purporting to require a promisor to submit a waiver or release of liens or claims as a condition of receiving interim or progress payments due from a promisee under a construction agreement or design professional agreement are void and unenforceable unless limited to the specific interim or progress payment actually received by the promisor in exchange for the lien waiver.

(b) This section does not apply to the following:

> (1)  Lien waivers or releases for final payments.

> (2)  Agreements to settle and compromise disputed claims after the claim has been identified by the claimant in writing regardless of whether the promisor has initiated a civil action or arbitration proceeding.

N.C. Gen. Stat. § 22B-5 (2023). Under this provision, lien claimants may only waive claims for which they have been paid to date and cannot waive future lien claims for which they have not been paid. *See* "§ 1:31. Public Policy Limitations on Common Construction Contract Provisions—Limits on Lien Waivers," N.C. CONSTR. L. (Aug. 2024). This is to say partial lien waivers are unenforceable unless they are limited specifically to the payment actually received. This is consistent with this Court's interpretation of N.C. Gen. Stat. § 44A-23: a partial lien waiver reduces the amount of a party's liability by the amount of the payment. Thus, when a subcontractor issues a partial lien waiver in exchange for a payment, the property owner's liability is reduced by the amount of that payment. However, a second- or third-tier subcontractor retains its lien claim and can enforce that claim to the extent there is

an outstanding balance on the primary contract.

Further, although it is true this provision differentiates between partial and final lien waivers, a careful reading of the statute bolsters our interpretation of the statute at issue here. Subsection (b) of § 22B-5 states the above section does not apply to "[l]ien waivers *or* releases for final payments." N.C. Gen. Stat. § 22B-5(b) (2023) (emphasis added). Merriam-Webster defines "or" as "(1) used as a function word to indicate an alternative, the equivalent or substitutive character of two words or phrases, or approximation or uncertainty." *Or*, THE MERRIAM-WEBSTER DICTIONARY (11th ed. 2022). Under this definition, we read the term "lien waiver" as "the equivalent or substitutive character" of the term that follows: "releases for final payments." Similarly, Black's Law Dictionary addresses the use of "or" in statutory construction: "in a legal instrument, *and* joins a conjunctive list to combine items, while *or* joins a disjunctive list to create alternatives." *Conjunctive/Disjunctive Canon*, BLACK'S LAW DICTIONARY (12th ed. 2024). Thus, N.C. Gen. Stat. § 22B-5 does not apply to final lien waivers; rather, a final lien waiver can eliminate all liability. This bolsters the above interpretation because a partial lien waiver only releases a property owner from the amount of liability tied to each partial lien waiver. While the General Assembly added language clarifying some lien waivers as partial in § 22B-5, when it referred simply to "lien waivers" it meant releases for final payment— final lien waivers.

Additionally, we note N.C. Gen. Stat. § 22B-5 was enacted in 2022—nine years

after N.C. Gen. Stat. § 44A-23(c) was enacted. Thus, although Section 22B-5 differentiates between partial and final lien waivers, it does not necessarily follow that the General Assembly had the same understanding or perception of different types of lien waivers in 2013. Indeed, the General Assembly declined to recognize partial lien waivers in 2012 when it rejected proposed amendments to N.C. Gen. Stat. § 44A-12, which included required forms for partial lien waivers and final lien waivers, as well as language specifying the differing effect of partial versus final lien waivers on the effective date of lien claims. *Compare* H.B. 1052, 2011 Gen. Assemb., 2012 Reg. Sess. (N.C. 2012) (proposed version 22 May 2012) *and* H.B. 1052, 2011 Gen. Assemb., 2012 Reg. Sess. (N.C. 2012) (adopted version 12 July 2012). We are, therefore, not persuaded Section 22B-5 requires a contrary reading of the term "lien waivers" in § 44A-23; rather, we conclude it bolsters this Court's prior interpretation. Thus, based on the pleadings and materials in the Record, we conclude Blastmaster was entitled to judgment as a matter of law for the full amount of its lien.

II.     Issues of Material Fact

Defendants also contend the trial court erred in granting summary judgment for Blastmaster because there were genuine issues of material fact. Defendants specifically argue there was no evidence proving Blastmaster's equipment was directly utilized on the Project after Land Coast abandoned the Project; thus, there is a genuine issue of material fact as to whether all the equipment for which Blastmaster asserted its lien was directly used to improve the Project "for all the time

periods covered by its invoices and lien claims." Therefore, Defendants assert, Blastmaster may not be entitled to the amount it sought for the use of its equipment after Land Coast left the Project. We disagree.

As above, "[o]ur standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. at 573, 669 S.E.2d at 576 (citation and quotation marks omitted); *see also Rawls*, 144 N.C. App. at 289, 550 S.E.2d at 222 ("A summary judgment motion should be granted when, based upon the pleadings and supporting materials, the trial court determines that only questions of law, not fact, are to be decided." (citation omitted)).

Blastmaster sought relief under Chapter 44A, Article 2 of our General Statutes. This Article provides for lien rights to a second-tier subcontractor, which it defines as "[a] person who contracts with a first tier subcontractor to improve real property." N.C. Gen. Stat. § 44A-7(8) (2023). The term "improve" under this Section means "[t]o build, effect, alter, repair, or demolish any improvement upon, connected with, or on or beneath the surface of any real property, . . . and rental of equipment directly utilized on the real property in making the improvement." N.C. Gen. Stat. § 44A-7(3) (2023). Thus, to make a claim for a lien on real property, Blastmaster must prove its equipment was "directly utilized" on the Project.

According to Defendants, Land Coast abandoned its work under the Painting

Subcontract on 23 July 2021, and it did not return to the Project prior to its termination on 23 August 2021. Blastmaster submitted nine invoices totaling $61,293.80 for use of its equipment after Land Coast abandoned the Project. Defendants contend there was no evidence in the Record showing Blastmaster's rental equipment was directly utilized on the Project after Land Coast's abandonment of the Project on 23 July 2021; thus, in Defendants' view, there was a genuine issue of material fact as to whether all of the equipment for which Blastmaster asserted its lien was directly utilized to improve the Project through the dates for which it billed Land Coast.

Defendants point to no caselaw or statute to support their assertion that the requirement equipment be "directly utilized" to improve real property means such equipment must be continuously utilized. It is undisputed that Blastmaster furnished the rental equipment at issue for the Project, the equipment remained onsite at the Project at all times covered by Blastmaster's invoices, and that the equipment was, in fact, directly utilized on the Project. Further, Defendants acknowledge none of the invoices Blastmaster submitted cover a time period after Land Coast was terminated from the Project. Defendants' only contention, then, is that Blastmaster needed to prove the equipment was actively used on the Project after Land Coast's abandonment of the Project. However, such a requirement is not supported by our caselaw or the plain language of the statute. Indeed, we agree with Plaintiff that such a requirement would be untenable in a case such as this, involving

- 12 -

rental equipment which is made available on a particular site and therefore cannot be rented by the supplier to a different customer. In the absence of statutory or caselaw support, we decline to read into § 44A-7(8) a requirement that a supplier establish rental equipment was used throughout the entirety of a time period at issue.

Based on the Record and materials before us, Plaintiff established its rental equipment was used on the Project and was onsite at the Project until Land Coast was terminated from the Project. Further, Plaintiff's invoices cover only the period of time prior to Land Coast's termination from the Project. Thus, we conclude Plaintiff established its rental equipment was directly utilized on the Project for purposes of satisfying the definitions of "second-tier subcontractor" and "improve" under N.C. Gen. Stat. § 44A-7(3) and (8). Therefore, there was no genuine issue of material fact before the trial court. Consequently, Plaintiff was entitled to summary judgment.

## Conclusion

Accordingly, for the foregoing reasons, we affirm the trial court's Order granting summary judgment for Plaintiff.


AFFIRMED.

Judges STROUD and ZACHARY concur.