IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-487-2

Filed 17 June 2026

Guilford County, No. 22CVS007024-400

EMILY HAPPEL, individually, Tanner Smith, a minor, and EMILY HAPPEL on behalf of TANNER SMITH as his mother, Plaintiffs,

v.

GUILFORD COUNTY BOARD OF EDUCATION and OLD NORTH STATE MEDICAL SOCIETY, INC., Defendants.

On remand by majority opinion of the Supreme Court of North Carolina in *Happel v. Guilford Cnty. Bd. of Educ.*, 387 N.C. 186, 913 S.E.2d 174 (2025), affirming in part, reversing in part, and remanding a published opinion by a unanimous panel of the Court of Appeals in *Happel v. Guilford Cnty. Bd. of Educ.*, 292 N.C. App. 563, 899 S.E.2d 387 (2024). The case originates from an appeal by plaintiff from an order entered on 1 March 2023 by Judge Lora C. Cubbage in Superior Court, Guilford County, granting defendant's motion to dismiss. Originally heard in the Court of Appeals on 28 November 2023.

> *Walker Kiger, PLLC, by David Steven Walker, for Plaintiffs-Appellants.*
>
> *Tharrington Smith, LLP, by Stephen G. Rawson, for Guilford County Board of Education, Defendants-Appellees.*
>
> *Rossabi Law Partners, by Gavin J. Reardon and Amiel J. Rossabi, for Old North State Medical Society, Inc., Defendants-Appellees.*

WOOD, Judge.

This case returns on remand from the Supreme Court of North Carolina for

our consideration of whether Plaintiffs' complaint sufficiently alleges constitutional claims under the North Carolina Constitution. Specifically, our Supreme Court remanded two questions for our consideration: (1) "whether plaintiffs' complaint sufficiently alleged that defendant [ONS Medical Society ("ONSMS")] was a state actor[;]" and (2) "whether plaintiffs have an adequate state remedy available for their constitutional claims." *Happel v. Guilford Cnty. Bd. of Educ.*, 387 N.C. 186, 216, 913 S.E.2d 174, 198 (2025). We address these two issues as directed. After careful consideration, we conclude Plaintiffs sufficiently alleged state constitutional claims and remand this matter to the trial court for consideration of those claims.

## I. Factual and Procedural History

On 14 August 2021, Tanner Smith ("Tanner") was fourteen years old and a football player at Western Guilford High School, a school within the Guilford County Schools system. By letter dated 19 August 2021, Guilford County Schools informed Emily Happel ("Emily"), Tanner's mother, and Brett Happel ("Brett"), Tanner's stepfather, that Tanner may have been exposed to a "recent COVID-19 cluster" involving football team members at his school and that the Guilford County Public Health Department recommended and requested COVID-19 testing for individuals potentially infected, regardless of vaccination status. The letter stated that unless parents allowed their children to be tested, Guilford County Schools would not allow the players "to return to practice until cleared by a public health professional." The letter further stated COVID-19 testing would be available on 20 August 2021 at no

cost at Northwest Guilford High School, conducted by ONSMS and "consent for testing is required." In addition to COVID-19 testing, ONSMS also administered COVID-19 Vaccinations at the Northwest Guilford High School site.

On 20 August 2021, Brett drove Tanner to the testing site at Northwest Guilford High School. Brett remained inside his vehicle while Tanner went into the testing facility. Once inside, clinic workers gave Tanner a form to fill out, which he believed to be something related to the COVID-19 test. While Tanner sat in the waiting area, a clinic worker tried unsuccessfully to contact Emily by phone to obtain consent for ONSMS to administer a COVID-19 vaccine to him. Clinic workers did not attempt to contact Brett, who waited outside in his car, to obtain permission to administer the COVID-19 vaccine to Tanner. After failing to reach Tanner's mother by phone, one of the clinic workers instructed the other clinic worker to "give it to him anyway." Tanner stated he did not want a vaccine and was only there to be tested; however, one of the clinic workers administered a Pfizer COVID-19 vaccine to him over his objection and without parental consent.

Plaintiffs initiated this lawsuit on 19 August 2022, alleging three causes of action: (1) battery; (2) violations of Emily's constitutional liberty and parental rights, and of Tanner's bodily autonomy rights under N.C. Const. art. I, §§ 1, 13, and 19; and (3) violations of both Plaintiffs' federal constitutional rights. On 21 November 2022, the Guilford County Board of Education ("Board") filed its answer, a motion to dismiss pursuant to Rules 12(b)(1) and (6), and a cross-claim against ONSMS. On

30 December 2022, ONSMS filed its answer and a motion to dismiss pursuant to Rules 12(b)(1) and (6).

The trial court held a hearing on 30 January 2023. On 1 March 2023, the trial court entered an order dismissing Plaintiffs' complaints as to both Defendants. On 9 March 2023, Plaintiffs filed timely written notice of appeal pursuant to N.C. Gen. Stat. § 7A-27(b). On appeal, Plaintiffs abandoned their federal constitutional claims, appealing only their individual state constitution claims and the battery claim. This Court affirmed the trial court's ruling on both claims based on the broad scope of immunity provided by the PREP Act. *Happel v. Guilford Cnty. Bd. of Educ.*, 292 N.C. App. 563, 571-72, 899 S.E.2d 387, 394 (2024).

Our Supreme Court granted discretionary review pursuant to N.C. Gen. Stat. § 7A-31 and issued an opinion on 21 March 2025. *Happel v. Guilford Cnty. Bd. of Educ.*, 387 N.C. 186, 913 S.E.2d 174 (2025). The Supreme Court affirmed this Court's holding as to the trial court's dismissal of Plaintiffs' tort claim for battery based on the immunity provided by the PREP Act. *Id.* at 216, 913 S.E.2d at 198. However, the Supreme Court reversed this Court's holding as to the trial court's dismissal of the state constitutional claims stating, "[t]he PREP Act's plain text leads us to conclude that its immunity only covers tort injuries. Because tort injuries are not constitutional violations, the PREP Act does not bar plaintiffs' constitutional claims." *Id.* at 187-88, 913 S.E.2d at 180. The Supreme Court remanded the matter to this Court for our consideration of whether Plaintiffs' complaint sufficiently alleges

constitutional claims under our state's constitution.

## II. <u>Analysis</u>

> Where there is a right, there is a remedy. This is a foundational principle of every common law legal system, including ours. We have long called it a time-honored maxim. It is even enshrined in the North Carolina Constitution. To protect this principle—to ensure that every right does indeed have a remedy in our court system—this Court created what are known as '*Corum* claims.'

*Washington v. Cline,* 385 N.C. 824, 825, 898 S.E.2d 667, 668-69 (2024) (cleaned up) (citing *Corum v. Univ. of N.C.*, 330 N.C. 761, 413 S.E.2d 276 (1992)).

In order to allege a sufficient *Corum* claim three criteria must be met: (1) the complaint must allege the defendant is a state actor who violated the claimant's state constitutional rights; (2) the claim must be a colorable claim that "present[s] facts sufficient to support an alleged violation of a right protected by the State Constitution;" and (3) there must be no other "adequate state remedy" for the alleged constitutional violation. *Kinsley v. Ace Speedway Racing, Ltd.*, 386 N.C. 418, 423, 904 S.E.2d 720, 726 (2024) (quoting *Deminski on behalf of C.E.D. v. State Bd. of Educ.*, 377 N.C. 406, 413, 858 S.E.2d 788, 794 (2021)) .

In *Happel*, the Supreme Court analyzed the second prong under *Corum* and upheld Plaintiffs' claims for violation of parental rights and bodily integrity as colorable: "[T]he Law of the Land Clause protects both a parent's right to control her child's upbringing and the right to bodily integrity[.]" *Happel*, 387 N.C. at 200, 913

S.E.2d at 188.  The Court thoroughly summarized the history of "perhaps the oldest of the fundamental liberty interests" in North Carolina — "in this State, parents have the natural and legal right to the custody, companionship, *control, and bringing up* of their infant children" — and emphasized a family's critical role in imparting moral and cultural values on children.  *Id.* at 195, 913 S.E.2d at 185 (emphasis in original).  Further, the Court clarified that a competent person has the constitutional right to express their bodily integrity by "refus[ing] forced and nonmandatory medical treatment."  *Id.* at 200, 913 S.E.2d at 188.

Concluding our Law of the Land Clause protects the constitutional claims presented by Plaintiffs, the Court directed this court to evaluate the remaining requisite elements of *Corum* claims, 1) "whether plaintiffs' complaint sufficiently alleged that defendant ONSMS was a state actor[,]" and 2) "whether plaintiffs have an adequate state remedy available for their constitutional claims."  *Id.* at 216, 913 S.E.2d at 198.  We address each in turn.

**A. ONSMS as a State Actor**

"When reviewing a motion to dismiss, an appellate court considers 'whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory.'"  *Deminski*, 377 N.C. 406, 412, 858 S.E.2d 788, 792-93 (2021) (quoting *Coley v. State*, 360 N.C. 493, 494-95, 631 S.E.2d 121, 123 (2006)).

In order to overcome such a motion, a plaintiff is not

required to "conclusively establish" any factual issue in the case. Rather, the only question properly before a court reviewing a Rule 12(b)(6) motion is whether "the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true."

*Feltman v. City of Wilson*, 238 N.C. App. 246, 256, 767 S.E.2d 615, 622 (2014) (citation omitted). Therefore, to overcome Defendant's motion to dismiss Plaintiff must have alleged under "some legal theory" that Defendants were "state actors." In their complaint Plaintiffs state, in pertinent part:

> 17. Upon information and belief, that vaccination clinic was operated jointly by defendants.
>
> 18. Upon information and belief, the vaccination clinic was a joint venture between Guilford County Schools and Old North State Medical Society, Inc.
>
> 19. Tanner was shown to a seat, and the workers at the clinic attempted to contact Mrs. Happel, without success, to obtain consent to give Tanner a COVID-19 vaccine.
>
> . . .
>
> 21. After their failed attempts to contact Mrs. Happel, one of the workers instructed the other worker to "give it to him anyway."
>
> . . .
>
> 23. Despite failing to get parental consent or the consent of the patient, Tanner Smith received a COVID-19 vaccine dose.
>
> . . .
>
> 45. Guilford County Schools is a state actor.

Our Supreme Court has stated, "[e]ncroachment by the State is, of course, accomplished by the acts of individuals who are clothed with the authority of the State" and thus, a *Corum* claim must be brought against "a state actor." *Deminski*, 377 N.C. at 413, 858 S.E.2d at 793 (cleaned up). However, while the prongs of a *Corum* claim, including the "state actor" requirement, are cited regularly by our appellate courts, a thorough review of case law reveals a dearth of information regarding what it means to be "clothed with the authority of the State" or whether a private party can qualify as a "state actor" for the purposes of a *Corum* claim. *See, e.g, Deminski*, 377 N.C. at 413, 858 S.E.2d at 793; *Coastal Conservation Ass'n v. State*, 285 N.C. App. 267, 279, 878 S.E.2d 288, 299 (2022); *Proctor v. City of Jacksonville*, 296 N.C. App. 665, 674, 910 S.E.2d 269, 277 (2024).

In *Bailey v. Flue-Cured Tobacco Co-op. Stabilization Corp.*, 158 N.C. App. 449, 457, 581 S.E.2d 811, 816 (2003), this Court held that because the entity in *Bailey* was "not a State actor" the claim failed. However, the plaintiffs in *Bailey* did not argue that defendants were a state actor. Rather, plaintiffs merely argued that section 34 of the North Carolina Constitution applied to the litigation "even in the absence of a State actor," a contention with which this Court disagreed. However, this Court did not analyze the qualifications for a "state actor." *Id*.

The issue of who qualifies as a "state actor" appears to be a novel consideration in regard to *Corum* claims. Therefore, we look to other areas of law where courts have analyzed similar principles.

For example, under 42 U.S.C. § 1983,

> Private persons, *jointly engaged* with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

*United States v. Price*, 383 U.S. 787, 794, 86 S. Ct. 1152, 1157, 16 L. Ed. 2d 267, 272 (1966) (emphasis added). Under this theory of "joint engagement," the U.S. Supreme Court held that a "private party's joint participation with state officials in the seizure of disputed property" makes the private party a "state actor for the purposes of the Fourteenth Amendment." *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 941, 102 S. Ct. 2744, 2756, 73 L. Ed. 2d 482, 498 (1982). More recently, the Court reiterated its holding that "when a private actor operates as a 'willful participant in joint activity with the State or its agents,'" the private actor is a state actor. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296, 121 S. Ct. 924, 930, 148 L.Ed.2d 807, 817 (2001) (quoting *Lugar*, 457 U.S. at 941, 102 S. Ct. at 2756, 73 L. Ed. 2d at 498). This Court recently summarized the analysis for qualification as a "state actor" under 42 U.S.C. § 1983,

> In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to

> the plaintiff, and *the question is whether the State was sufficiently involved to treat that decisive conduct as state action.* This may occur if the State creates the legal framework governing the conduct, if it delegates its authority to the private actor, or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior. Thus, in the usual case we ask whether the State provided a mantle of authority that enhanced the power of the harm-causing individual actor.

*Hailey v. Tropic Leisure Corp.,* 275 N.C. App. 485, 495, 854 S.E.2d 132, 140 (2020) (emphasis in original) (quoting *Nat'l Collegiate Ath. Ass'n*, 488 U.S. 179, 192, 109 S. Ct. 454, 462, 102 L. Ed. 2d 469, 484-85 (1988)).

Similarly, when this Court has analyzed fourth amendment claims, it has determined whether a private citizen qualifies as a state actor utilizing a "*totality of the circumstances* approach." *State v. Weaver*, 231 N.C. App. 473, 480, 752 S.E.2d 240, 245 (2013) (emphasis added). This approach "requires special consideration of 1.) the citizen's motivation for the search or seizure, 2.) the degree of governmental involvement, such as advice, encouragement, knowledge about the nature of the citizen's activities, and 3.) the legality of the conduct encouraged by the police." *Id.* (cleaned up); *see also State v. Sanders*, 327 N.C. 319, 334, 395 S.E.2d 412, 422 (1990). This Court has held that private citizens acted as state actors based on the totality of the circumstances when they were "actively recruited" by or acted at the "request of" police and when a landlord and police conducted a search for "joint purposes." *Sanders*, 327 N.C. at 333, 395 S.E.2d at 422.

Here, Plaintiffs clearly allege that Guilford County Schools was a state actor and that ONSMS was working jointly with the state actor when its clinic worker allegedly forcibly vaccinated a minor against his expressed wish and without the consent of either the parent or the patient himself.

Although our Courts have not explicitly addressed whether private parties working jointly with the state qualify as "state actors" for purposes of *Corum* claims, our Courts have consistently held that "a complaint should not be dismissed for insufficiency unless it appears *to a certainty* that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. Pleadings are to be liberally construed." *Benton v. W. H. Weaver Const. Co.*, 28 N.C. App. 91, 94, 220 S.E.2d 417, 419 (1975) (citation and other emphasis omitted). Furthermore, when "the statement of [Plaintiff's] claim in the complaint is sufficient to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case brought[,]" it is an adequate pleading. *Id.* at 95, 220 S.E.2d. at 420.

Because there are legal theories under which ONSMS could be viewed as a state actor such as "joint engagement" used in § 1983 claims and the "totality of the circumstances" used in fourth amendment claims, we hold Plaintiffs sufficiently alleged ONSMS was a state actor.

**B. Adequate State Remedy**

"When the plaintiff has a cognizable state constitutional claim and cannot access the courts to obtain any form of relief, *Corum* is available." *Washington*, 385 N.C. at 830, 898 S.E.2d at 671. "[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 339-40, 678 S.E.2d 351, 355 (2009). Direct constitutional claims are not available where there are claims and or remedies under state law that provide an alternative to "the extraordinary exercise of [ ] inherent constitutional power." *Corum,* 330 N.C. at 784, 413 S.E.2d at 291.

Our Supreme Court has clearly stated that the federal PREP Act provides immunity to both entities and individuals against "any type of tortious injury: physical injury, property damage, loss of use, and so on." *Happel*, 387 N.C. at 211, 913 S.E.2d at 194. Thus, the PREP Act bars Plaintiffs' battery claims, or any other tort claim, whether brought against a party in their official capacity or individually, completely foreclosing any opportunity to obtain relief apart from a *Corum* claim. The PREP Act provides Plaintiffs with no remedy under state law that would serve as an alternative to the exceptional use of constitutional authority.

Our courts have long held that a state law claim "barred by sovereign or governmental immunity is not an adequate remedy" under the third element of a *Corum* claim. *Deminski*, 377 N.C. at 413, 858 S.E.2d at 794. An adequate state remedy in "redressing a constitutional wrong" must provide the plaintiff an

opportunity to "enter the courthouse doors and present his claim," and "must provide the possibility of relief under the circumstances." *Craig*, 363 N.C. at 339-340, 678 S.E.2d at 355.

A tort claim cannot stand as an "adequate remedy" if PREP Act immunity ensures the plaintiff has neither the opportunity to enter the courthouse nor the possibility of relief. Therefore, we hold, under the facts of this case, Plaintiffs have no other "adequate state remedy" for their alleged constitutional violations.

Plaintiff's complaint withstands the motion to dismiss. *Deminski*, 377 N.C. at 412, 858 S.E.2d at 792–93; *Price*, 383 U.S. at 794, 86 S. Ct. at 1157, 16 L. Ed. 2d at 272; *State v. Weaver*, 231 N.C. App. at 480, 752 S.E.2d at 245. Therefore, we remand this case to the trial court for a hearing on Plaintiff's claims. Upon remand the trial court must determine whether, under the facts of this case, Defendants were "clothed with the authority of the State" for the purposes of a *Corum* claim and if so whether any claim is meritorious.

### III. Conclusion

The PREP Act does not bar Plaintiffs' colorable constitutional claims. Taking all of Plaintiffs' allegations as true, we conclude there are sufficient legal theories under which ONSMS could be deemed a state actor and there is no other "adequate state remedy" for the alleged constitutional violations. Therefore, we reverse the trial court's order to dismiss and remand this matter to the trial court to determine if

Defendants were "clothed with the authority of the State" for the purposes of a *Corum* claim and if so whether any claim is meritorious.

REVERSED AND REMANDED.

Judges COLLINS and CARPENTER concur.