IN THE SUPREME COURT OF NORTH CAROLINA

No. 167PA22
No. 168PA22

Filed 31 January 2025

JOHN DOE 1K

v.

ROMAN CATHOLIC DIOCESE OF CHARLOTTE a/k/a ROMAN CATHOLIC DIOCESE OF CHARLOTTE, NC

---

JOHN DOE

v.

ROMAN CATHOLIC DIOCESE OF CHARLOTTE a/k/a ROMAN CATHOLIC DIOCESE OF CHARLOTTE, NC

Consolidated cases on discretionary review pursuant to N.C.G.S. § 7A-31 of unanimous decisions of the Court of Appeals, 283 N.C. App. 171 (2022), and 283 N.C. App. 177 (2022), affirming orders entered on 22 January 2021 by Judge Carla N. Archie in Superior Court, Mecklenburg County. On 21 March 2024, the Supreme Court allowed defendant's conditional petitions for discretionary review as to additional issues. Heard in the Supreme Court on 18 September 2024.

*Wilder Pantazis Law Group, PLLC, by Sam McGee, for plaintiff-appellants.*

*Troutman Pepper Hamilton Sanders LLP, by Joshua D. Davey, for defendant-appellee.*

*Jeff Jackson, Attorney General, by Ryan Y. Park, Solicitor General, Nicholas S. Brod, Deputy Solicitor General, and Orlando L. Rodriguez, Special Deputy Attorney General, for the State, amicus curiae.*

DIETZ, Justice.

In 2019, the General Assembly passed the SAFE Child Act, which revived claims for child sexual abuse that were time-barred by the statute of limitations. As explained in a companion opinion issued today, a law that revives previously time-barred claims by changing the statute of limitations after it already expired is not facially unconstitutional under the Law of the Land Clause in the North Carolina Constitution. *McKinney v. Goins*, No. 109PA22-2 (N.C. Jan. 31, 2025).

This case presents a different constitutional dilemma. Plaintiffs in this case are alleged victims of child sexual abuse in the 1970s and 1980s. The SAFE Child Act would have revived plaintiffs' time-barred claims except for one glaring problem— plaintiffs already brought those claims over a decade ago and courts already entered final judgments dismissing those claims with prejudice because they were time-barred.

Plaintiffs contend that the SAFE Child Act overrides those earlier judgments and permits them to bring their newly revived claims. As explained in more detail below, the General Assembly does not have the power to set aside a final judgment of the judicial branch. "The power to provide relief against the operation of a former judgment is an integral part of the judicial power." *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 139 (1985). Under well-settled separation of powers principles, "the Legislature has no right, directly or indirectly, to annul, in whole or in part, a judgment or decree of a court already rendered" and "every such attempt of legislative

action is plainly an invasion of judicial power, and therefore unconstitutional and void." *Piedmont Mem'l Hosp., Inc., v. Guilford County*, 221 N.C. 308, 313 (1942).

Had plaintiffs returned to the court that entered the judgments and sought relief based on the SAFE Child Act, that court may have exercised its discretion to set aside the judgments in the interests of justice. But plaintiffs chose instead to file entirely new lawsuits and insist that the General Assembly can override final judgments of the judicial branch because "it is not up to the courts to search for some implied constraint on legislative power."

The constraint on the legislative branch at issue here is not an implied one; under Article IV of the North Carolina Constitution, the judicial power belongs to the judicial branch alone. We therefore affirm the decisions of the Court of Appeals, which properly concluded that the SAFE Child Act, like any other act of the General Assembly, cannot overturn a final judgment entered by the judicial branch.

**Facts and Procedural History**

In 2011, plaintiffs sued the Roman Catholic Diocese of Charlotte in separate actions, alleging that they were sexually abused by Catholic priests many decades ago. In both cases, the trial court granted summary judgment for the Diocese, finding that the applicable statutes of limitations barred plaintiffs' claims. One plaintiff appealed the judgment to the Court of Appeals and lost. The other did not appeal. Both of plaintiffs' judgments became final a decade ago.

In 2019, the General Assembly passed the SAFE Child Act, which included

many reforms to protect children from sexual abuse. *See* An Act to Protect Children from Sexual Abuse and to Strengthen and Modernize Sexual Assault Laws, S.L. 2019-245, 2019 N.C. Sess. Laws 1231. Included in the act is a provision that changed the existing statutes of limitations in a way that revived previously time-barred legal claims for child sexual abuse. *See McKinney*, slip op. at 4–5.

In 2020, plaintiffs returned to court and filed entirely new lawsuits asserting the same child sexual abuse claims that were dismissed in the earlier final judgments. Plaintiffs took the position that by "reviving" their claims through the SAFE Child Act, the General Assembly had effectively set aside the earlier judgments and permitted plaintiffs to bring new lawsuits.

The trial court dismissed both newly filed lawsuits with prejudice on the ground that the claims were barred by the res judicata effect of the earlier judgments.

Plaintiffs appealed and the Court of Appeals affirmed. That court, too, held that the newly filed lawsuits were barred by the doctrine of res judicata because our court system already had entered final judgments on the same claims. *Doe 1K v. Roman Cath. Diocese*, 283 N.C. App. 171, 175 (2022); *Doe v. Roman Cath. Diocese*, 283 N.C. App. 177, 181 (2022).

Plaintiffs petitioned for discretionary review. We allowed the petitions and consolidated the cases for appeal.

## Analysis

There is perhaps no doctrine in the law more fundamental to the judicial branch than "res judicata"—a Latin phrase meaning "the matter has been decided." *See Poindexter v. First Nat. Bank of Winston Salem*, 247 N.C. 606, 619 (1958). The doctrine of res judicata was "developed by the courts of our legal system during their march down the corridors of time" and provides that "a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties." *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 427–28 (1986).

The key purpose of res judicata is to provide the finality that is necessary to give court judgments their intended effect. *See id.* When a court of competent jurisdiction enters a judgment and all appeals are exhausted, the judgment is final. The rights of the parties vest and they can adjust their expectations knowing that the courts have spoken and the matter is settled. *Garner v. Garner*, 268 N.C. 664, 666–67 (1966).

Here, the Court of Appeals properly held that res judicata applies to the final judgments entered against plaintiffs over a decade ago. First, those judgments were an adjudication on the merits. The judgments resulted from orders granting defendant's motions for summary judgment and dismissing plaintiffs' claims "with prejudice." This type of dismissal with prejudice "operates as an adjudication upon the merits" under our Rules of Civil Procedure. *See* N.C.G.S. § 1A-1, Rule 41(b) (2023).

Likewise, the earlier judgment involved the same causes of action between the same parties. Thus, res judicata bars this second lawsuit. *See McInnis*, 318 N.C. at 427–28.

The crux of plaintiffs' appeal is not that res judicata does not apply, but that it *cannot* apply because the General Assembly overrode it through the SAFE Child Act. Plaintiffs argue that the intent of the legislature was to revive *all* previously time-barred child sexual abuse claims, even those that were subject to an existing final judgment. Plaintiffs insist that there is no "express limitation in the constitutional text" of the North Carolina Constitution that prohibits the legislature from overturning final judgments. They further argue that "it is not up to the courts to search for some implied constraint on legislative power."

We can say beyond any doubt that this is wrong. Article IV of the North Carolina Constitution vests the "judicial power" exclusively in the courts and further states that the "General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-ordinate department of the government." N.C. Const. art. IV, § 1. The Separation of Powers Clause further provides the "legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. Const. art. I, § 6. It is therefore beyond question that the General Assembly cannot wield the judicial power of this state.

The power to enter judgments is the *core* judicial power of the courts. *Gardner v. Gardner*, 300 N.C. 715, 719 (1980). This judicial power extends not only to entering

judgments but also to providing relief from them. "The power to provide relief against the operation of a former judgment is an integral part of the judicial power." *Hogan*, 315 N.C. at 139. "Such power is a remedy fashioned by courts to relieve hardships which from time to time arise from a fast and hard adherence to the usual rule that judgments should not be disturbed once entered." *Id.*

Because providing relief from a judgment is a judicial act, "the Legislature has no right, directly or indirectly, to annul, in whole or in part, a judgment or decree of a court already rendered" and "every such attempt of legislative action is plainly an invasion of judicial power, and therefore unconstitutional and void." *Piedmont*, 221 N.C. at 313. Simply put, under the North Carolina Constitution, only the judicial branch may set aside a judgment that it previously entered.

This principle applies regardless of the *reason* that a court entered the final judgment on the merits. For example, we have applied it to final judgments entered based on procedural issues, such as the proper venue for a lawsuit. *Gardner*, 300 N.C. at 719. We have applied it when the legislature believed the courts misunderstood the intent of a statutory enactment and tried to retroactively change the law. *Piedmont*, 221 N.C. at 313. And, most importantly, we have applied it in circumstances analogous to this case. *See Hogan*, 315 N.C. at 139.

In *Hogan*, the Industrial Commission dismissed the plaintiff's workers' compensation claim for brown lung disease based on the determination that the plaintiff's exposure occurred too long ago to permit relief. *Id.* at 129–31. The General

Assembly later passed a law providing that claims for brown lung disease "shall be compensable regardless of the employee's date of last injurious exposure." *Id.* at 134.

The plaintiff then argued that the effect of that statute was to permit "a new cause of action" on his brown lung claim—one that essentially ignored the existing judgment. *Id.* at 142. We rejected that argument, explaining that the separation of powers doctrine "precludes the legislature from enacting a statute which alters a result obtained by final judicial decision before the date of the statute's enactment." *Id.*

We are not alone in this view of the separation of powers. The Supreme Court of the United States has addressed an issue nearly identical to the one presented here. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995). In *Plaut*, the plaintiffs brought securities fraud claims, and the trial court dismissed those claims as barred by a statute of limitations established by Supreme Court precedent. *Id.* at 213–14. Congress disagreed with the Supreme Court's statute-of-limitations decision and later enacted a law creating a new limitations period. *Id.* at 214–15. This new law stated that any action previously dismissed as time-barred under the court-created statute of limitations "shall be reinstated on motion by the plaintiff." *Id.*

After a lengthy discussion of the history and purpose of the separation of powers, the Supreme Court held that the new law was "unconstitutional to the extent that it requires federal courts to reopen final judgments entered before its enactment" because "separation of legislative and judicial powers denies it the authority to do so."

*Id.* at 240.

We agree with the separation of powers discussion in *Plaut*, which reflects the same principles embedded in our state constitutional doctrine. Indeed, our state's separation of powers principles are, if anything, stronger than those in the federal constitution. After all, the federal doctrine is implied based on the structure of the United States Constitution. *State ex rel. Wallace v. Bone*, 304 N.C. 591, 598 (1982). In the North Carolina Constitution, by contrast, the Declaration of Rights includes an express provision that the "legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. Const. art. I, § 6.

In sum, the constitutional issue in this case is neither novel nor unsettled—the rule that the General Assembly cannot by statute provide relief from a final judgment is deeply rooted in our jurisprudence and supported by universal constitutional principles of separation of powers. Accordingly, the Court of Appeals correctly held that res judicata bars plaintiffs' new lawsuits because the SAFE Child Act, like any other act of the legislative branch, cannot set aside a final judgment of the judicial branch.[1] *See Doe 1K*, 283 N.C. App. at 176; *Doe*, 283 N.C. App. at 181.

## Conclusion

We affirm the decisions of the Court of Appeals.

---

[1] Nothing in this opinion forecloses or bars plaintiffs from pursuing a Rule 60(b) motion in the trial court and this Court does not express any view on the timeliness or merits of such a motion.

AFFIRMED.